UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



ROGER HARRY OLSON, II,　　　§
　　　　　　　　　　　　　　　§
　　　　　Movant,　　　　　　§
　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　 §　 Civil No. 3:18-cv-_____
　　　　　　　　　　　　　　　§　 Crim No. 3:15-cr-00029-N-1
UNITED STATES OF AMERICA,　 §
　　　　　　　　　　　　　　　§
　　　　　Respondent.　　　　 §

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, ROGER HARRY OLSON, II ("Olson"), appearing *pro se,* and in support of this motion would show as follows:

## I. STATEMENT OF JURISDICTION

Olson is timely filing a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant ("§ 2255 Motion") contemporaneously with this Memorandum of Law. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2255. Section 2255 relief may be afforded if the movant's sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660 (5th Cir. 2012).

## II. <u>STATEMENT OF THE GROUND FOR REVIEW</u>

A.     Whether sentencing counsel's failure to file substantive objections to the PSR deprived Olson of effective assistance of counsel and a fair and just sentence.

B.     Whether, in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016) and *Holt v. United States*, (No. 16-1793) (7th Cir. Dec. 13, 2016), Olson's prior convictions do not qualify him as a career offender, requiring resentencing without the career offender enhancement.

## III. <u>STATEMENT OF THE CASE</u>

### A.     <u>Procedural Background</u>

On January 21, 2015, a grand jury sitting in the United States District Court for the Northern District of Texas, Dallas Division, returned a two (2) count Indictment charging Olson. See Doc. 1.[1] Count 1 charged Olson with Possession with Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(viii). *Id.* Count 2 charged Olson with Possession with Intent to Distribute Gamma Hydroxybutyric Acid ("GHB"), in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C). *Id.* Olson was also charged in a Forfeiture Notice pursuant to 21 U.S.C. § 853(a). *Id.*

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Northern District of Texas, Dallas Division in Criminal No. 3:15-cr-00029-N-1, which is immediately followed by the Docket Entry Number.

On August 31, 2015, the government filed a Penalty Enhancement Information and Notice of Intention to Seek Enhanced Penalty, pursuant to 21 U.S.C. § 851. See Doc. 41.

On September 25, 2015, a Re-arraignment Hearing was held and Olson entered a guilty plea on Counts 1 & 2 of the Indictment without a written Plea Agreement. See Doc. 46.

On April 18, 2016, Olson was sentenced to a total term of 180 months imprisonment, 8 years of Supervised Release, no fine, no restitution, and a Mandatory Special Assessment Fee of $200. See Doc. 64.

On April 26, 2016, Olson timely filed a Notice of Appeal. See Doc. 67.

On February 20, 2017, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") issued an Order affirming Olson's sentence and conviction. See Doc. 89.

**B.    Statement of the Facts**

1.    Offense Conduct

On May 15, 2014, a Detective with the Garland police department, another Garland Detective assigned as a task force officer with the Drug Enforcement Agency, a Dallas Detective assigned as a task force officer with the Drug Enforcement Agency, and several other officers executed a search and seizure warrant

for Olson's car. On this same date, officers searched Olson's apartment and found 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and also found a mixture containing gamma hydroxybutyric acid, a Schedule III controlled substance inside Olson's apartment. See Doc. 44 at 2.

Accordingly, Olson agreed that a mixture or substance that he knowingly possessed with intent to distribute was 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine and that he knowingly possessed with the intent to distribute gamma hydroxybutyric acid, commonly known as "GHB", a controlled substance. Olson also agreed that he committed each of the essential elements of counts 1 & 2 as set out in the factual resume. *Id.*

2.   <u>Plea Proceedings</u>

On September 25, 2015, a Re-arraignment Hearing was held before Magistrate Judge David L. Horan. See Doc. 46. Olson pled guilty as to Counts 1 and 2 of the Indictment without the benefit of a written Plea Agreement. *Id.* The Court accepted Olson's guilty plea and adjudged him guilty. See Doc. 80 at 16. The Court ordered the preparation of a Presentence Report ("PSR"). *Id.*

3.   <u>Presentence Report Recommendations</u>

The United States Probation Office prepared Olson's PSR. The PSR deemed Olson to be a career offender with a Total Offense Level of 34, in Criminal History Category VI, which yields an advisory guideline range of 262 to 327 months.

### 4.   Sentencing Proceeding

On April 18, 2016, a Sentencing Hearing was held before Honorable Judge David C. Godbey. See Doc. 64. Olson's PSR and Addendum to PSR Objections regarding his career offender status was discussed and overruled by the Court. See Doc. 81 at 3-6. The Court adopted the factual contents of the PSR, the guideline range yields a Total Offense Level of 34, in Criminal History Category VI, for a sentencing range of 262 to 327 months. The Court thought that the career offender enhancement was correctly calculated but the end result overstated Olson's criminal history, therefore, Judge Godbey sentenced Olson to a total term of 180 months as to Counts 1 and 2 to run concurrently. This sentence shall run consecutively to any sentence imposed in Case No. MA14-70343 pending in Dallas County Criminal Court 10, Dallas Texas; Case No. F14-23921 pending in the 194th Judicial District Court of Dallas County, Dallas, Texas; as well as any probation revocation in Case No. F11-56552 pending in the 194th Judicial District Court of Dallas County, Dallas, Texas. *Id*. at 18-19. The Court imposed the Mandatory Special Assessment Fee of $200. *Id*. at 19. Upon release from imprisonment, Olson shall be on supervised release for a term of 8 years on Count 1 and 3 years on Count 2, to run concurrently. *Id*. A timely Notice of Appeal was filed on April 26, 2016. See Doc. 67.

### 5. Appellate Proceeding

On Appeal, Olson contended that a conviction under § 11378 does not qualify as a controlled-substance offense under § 4B1.1 because it criminalizes an offer to sell a controlled substance. Thus, Olson's theory that § 11378 criminalizes offers to sell a controlled substance is without merit, because a conviction under § 11378 requires proof of actual or constructive possession of a controlled substance and the intent to sell it. Accordingly, the district court properly applied the career offender enhancement based on Olson's two convictions of possession of methamphetamine for sale. Therefore, on February 20, 2017, the Fifth Circuit affirmed Olson's Judgment. See Doc. 89.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or his detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255

(1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true, would entitle him to relief." *United States v. Batamula*, 823 F.3d 237 (5th Cir. 2016). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *United States v. Kayode*, 777 F.3d 719 (5th Cir. 2014) . However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under

28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Olson must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993) (citing *Strickland*, 466 U. S. at 690). In the course

8

of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. "[T]o prove prejudice, [Olson] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001).

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *United States v. Grammas*, 371 F.3d 281 (5th Cir. 2004); *United States th v. Conley*,

349 F.3d 837, 839 (5th Cir.2003). In a ruling on a motion under § 2255, the court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Cavitt*, 550 F.3d 430, 441-42 (5th Cir. 2008). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255.

10

# V. **DISCUSSION**

As a preliminary matter, Olson respectfully requests that this Court be mindful that "[T]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011); *Haines v. Kerner*, 404 U.S. 519 (1972).

### A. **Sentencing Counsel's Failure to File Substantive Objections to the PSR Deprived Olson of Effective Assistance of Sentencing Counsel, a Fair and Just Sentence.**

Prior to sentencing, James Joseph Mongaras, Jr. ("Mongaras"), Olson's attorney, briefly reviewed the PSR with him and advised him that his sentence will be enhanced pursuant to § 4B1.1 and § 851. Olson was confused by the way the Guidelines worked and its application in his case. He found errors in his PSR, which he communicated to Mongaras.

In this case, at sentencing, the district court "erred in failing to conduct a colloquy required under 21 U.S.C. § 851(b). When the government files a notice pursuant to 21 U.S.C. § 851(a) to establish prior conviction(s) and thereby secure an increase in the defendant's sentence, "the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to

a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). The district court in this case failed to do so. This was clear error by the court.

With regard to the prior conviction used to enhance Olson under 21 U.S.C. § 851, he was previously convicted of Possession for Sale of a Controlled Substance, to wit: Gamma Hydroxybutyric (GHB) and Possession of a Controlled Subatance, to wit: Methamphetamine, in Cause No. C0193566, in the Superior Court of California, County of San Diego, offense concluded on or about September 6, 2005, judgment entered December 8, 2005.

### 2013 Holder Memoranda

In *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the Supreme Court held that any fact that increases the statutory mandatory minimum sentence is an element of the crime that must be submitted to the jury and found beyond a reasonable doubt. This means that for a defendant to be subject to a mandatory minimum sentence, prosecutors must ensure that the charging document includes those elements of the crime that trigger the statutory minimum penalty.

To determine whether a prosecutor would file a § 851 enhancement today in the case of a defendant whose mandatory minimum and/or statutory maximum sentence was increased based on § 851 enhancements, look to the August 12, 2013

Holder Memorandum. It states that prosecutors "should decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions[,] . . . consider[ing]" six factors. The defendant need not meet each of the six criteria; instead, it is a totality of the circumstances test. There is no requirement that the defendant pled guilty or cooperated. And the question whether the client was "involved in the use or threat of violence in connection with the offense"—does not include relevant conduct, i.e., the conduct of a co-defendant, co-conspirator, or other person involved in the offense.

The Supreme Court made it clear in *Booker*, that any fact, other than a prior conviction, which is necessary to support a sentence exceeding the maximum authorized by the facts established in a jury verdict, must be found by a jury beyond a reasonable doubt. See *United States v. Booker*, 543 U.S. 220, 244 (2005). The amount of controlled substance for which Olson was held responsible was never determined beyond a reasonable doubt by a jury. Additionally, as a result of:

- Current Guidelines' relevant conduct rules,
- Revised Department of Justice Policies on the use of 21 U.S.C. § 851 to increase mandatory maximum sentences, and
- An advisory Guidelines system

it is very likely that if sentenced today, Olson punishment would be significantly lower than 180 months in prison.

The charging policies and directives of the U.S. Attorney General have evolved between 2010 and 2014 to mandate that federal prosecutors should not charge enhancements under 21 U.S.C. § 851 in order to trigger or increase mandatory minimum and maximum sentences unless defendants meet certain criteria. See Memoranda from Eric Holder, Attorney General, to United States Attorneys of August 12, 2013, and August 29, 2013. Under these policies, it is likely that the § 851 enhancement would not be filed today because Olson's offense did not involve violence, he was not the organizer or leader of the conspiracy, and he did not have significant ties to any large-scale drug organization. Olson was not "a serious, high-level, or violent drug trafficker" for whom the most severe mandatory minimum penalties are reserved. *Id.* Furthermore, his criminal history involved low level, non-violent drug activity or offenses related thereto (In determining whether a defendant has a "significant" criminal history to justify an enhancement, "...prosecutors should evaluate the facts beyond the number of criminal history points." A criminal history may not be significant if it is "for conduct that itself represents non-violent, low-level drug activity"). Olson's most serious prior convictions were for non-violent, low-level drug activity.

Additionally, in light of another recent policy of the U.S. Attorney General regarding sentencing advocacy, today the prosecution would not insist on the

sentence it sought in the 80's and 90's for a non-violent crime, because it fails to provide "individualized justice" that "smart law enforcement" and fairness demand. Memoranda from Eric Holder, Attorney General, to United States Attorneys of May 19, 2010, at 1.

Here, the timing of the 851 Enhancement filing– following the Motion to Suppress Hearing was retaliatory and against 2013 Holder Memoranda regarding low level offenders, which was never objected to by either Olson's retained District Court Attorney nor his Appellate Attorney. It was included in his PSR even though the motion to enhance had yet to be ruled upon by Judge Godbey.

<u>Motion to Suppress Was Not Preserved Properly for Appeal</u>

In this case, the Motion to Suppress was not preserved properly for Appeal by Mongoras. Olson pled guilty to the Indictment unconditionally. Mongoras advised Olson differently, he believed it would preserve all Olson's rights to appeal and gave him the best opportunity for appellate review. However, this was not the case, the Fifth Circuit did not have to consider the merits of the appeal due to the unconditional plea to the indictment. Due to this situation and the filing of the 851 Enhancement, things got terribly out of hand. Olson was considered a career offender with a then 10 to Life Indictment which raised the guideline level tremendously and exposed Olson to 360 months' imprisonment. Mongoras did not understand the interplay between the

career offender and the 851 Enhancement. Had Olson known how unlikely the

Motion to Suppress was to be granted and how great his exposure would become, he

would never have gone this route. Olson would have stayed with a guideline plea

which was 120 to150 months.

Hence, Mongaras' performance at sentencing was deficient, which prejudiced

Olson. The Court sentenced Olson 82 months below the minimum guideline range

pursuant to the factors of the 3553 and his proffer to the government. Absent the

career offender and 851 enhancements, Olson's Total Offense Level would be 27 in

Criminal History Category V, establishing an imprisonment range of 120 to 150

months.

**B.**   **In Light of _Mathis v. United States_, 136 S. Ct. 2243 (2016), _United States v. Hinkle_, 832 F.3d 569 (5th Cir. 2016) and _Holt v. United States_, (No. 16-1793) (7th Cir. Dec. 13, 2016), Olson's Prior Convictions Do Not Qualify Him as a Career Offender, Requiring Resentencing Without the Career Offender Enhancement.**

Recently, the United States Court of Appeals for the Seventh Circuit decided

_Holt v. United States_, (No. 16-1793) (7th Cir. Dec. 13, 2016). In _Holt_, the defendant

was convicted of possessing a firearm despite prior convictions that barred gun

ownership. See18 U.S.C. § 922(g)(1). Several of those convictions led the district

court to deem him an armed career criminal ("ACCA"), and impose a 200-month

sentence. While Holt's appeal was pending, the Court held that the version of the Illinois burglary statute under which he had been convicted was indeed not a "violent felony" because it did not satisfy the definition of "burglary" used in *Mathis v. United States*, 136 S. Ct. 2243 (2016), for indivisible statutes. See *United States v. Haney*, 840 F.3d 472 (7th Cir. 2016). The government conceded that *Mathis* was retroactive on initial § 2255 Motions. The Court held that Section 2255(a) allows a district court to reduce a sentence that exceeds the statutory maximum, and substantive decisions such as *Mathis* presumptively apply retroactively on collateral review. *Holt*, (No. 16-1793) (7th Cir. Dec. 13, 2016). See also, e.g., *Davis v. United States*, 417 U.S. 333 (1974); *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016).

In *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), defendant Hinkle appealed his sentence, contending that the district court erred in determining that he was a career offender within the meaning of USSG § 4B1.1(a). Hinkle argued that neither of his prior Texas convictions, one for burglary and the other for delivery of a controlled substance, constituted a predicate offense under the career-offender guidelines provision. The Court's decision turned upon whether the particular Texas statutes at issue were divisible such that a court may use the modified categorical approach to determine whether a defendant convicted under Texas law of knowingly delivering a controlled substance was convicted of delivery by one of the particular

17

means proscribed under Texas law. In light of the Supreme Court's recent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), the *Hinkle* Court concluded that his conviction for delivery of a controlled substance is not a "controlled substance offense" within the meaning of the Guidelines, and therefore, the career-offender enhancement did not apply based on the record presently before the Court. The Court vacated Hinkle's sentence and remanded for resentencing without the career offender Guideline enhancement.

In *Hinkle*, under the categorical approach, the government conceded that a conviction of delivering a controlled substance "by offering to sell" that substance, the crime would not come within the definition of a "controlled substance offense" under § 4B1.2.

The question in *Hinkle* was whether the Texas statutes under which the defendant was convicted were "divisible." See, e.g., *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). A statute is "divisible" when it "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile." *Id.*

As the Supreme Court explained in *Descamps*:

"[i]f one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to consult a limited class

of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction."

*Id.*

Recently, the United States Supreme Court decided *Mathis v. United States*, 136 S. Ct. 2243 (2016). In *Mathis*, the Supreme Court set forth how a court determines whether a statute is divisible and therefore whether, in employing the modified categorical approach, documents pertaining to the prior conviction may be used to ascertain if that conviction comes within a federal definition of an offense or has the elements of an enumerated offense. In *Mathis*, an Iowa burglary statute criminalized entry into or onto locations that included a building, a structure, land, water, or an air vehicle. *Id.* at 2250. Because generic burglary does not proscribe burglary of vehicles, the Iowa offense was overly inclusive; it included conduct that was not generic burglary. *Id.* at 2256. The sentencing court considered documents pertaining to *Mathis'* prior convictions, which reflected that he had burgled structures not vehicles, and the district court concluded that the sentencing enhancement under the ACCA applied. *Id.* at 2250. The Eighth Circuit affirmed, holding that whether the itemized list of places "amount[ed] to alternative elements or merely alternative means to fulfilling an element, the statute is divisible, and we must apply the modified categorical approach." *Mathis*, 786 F.3d 1068, 1075 (8th Cir. 2015). The

19

Supreme Court reversed the Eighth Circuit because the Iowa Supreme Court had held that the Iowa statute sets forth "alternative method[s] of committing [the] single crime," and an Iowa "jury need not agree on which of the locations was actually involved." *Mathis*, 136 S. Ct. at 2250 (citing *State v. Duncan*, 312 N.W.2d 519, 523 (Iowa 1981).

The *Mathis* decision instructs that there is a difference between alternative elements of an offense and alternative means of satisfying a single element. Elements must be agreed upon by a jury. When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense. See *United States v. Lobaton-Andrade*, (No. 15-41744) (5th Cir. 2017).

In light of *Mathis*, it must be determined whether "listed items" in a state statute "are elements or means," and if "a state court decision definitively answers the question" the inquiry is at an end. See *Mathis*, 136 S. Ct. at 2256. The Iowa statute was clear in *Mathis*. As the Supreme Court held in *Mathis*, "[w]hen a ruling of that kind exists, a sentencing judge need only follow what it says." *Id.* at 2256. It is therefore not necessary to utilize the other means set forth in *Mathis* for discerning whether alternatives listed in a statute are elements or means. *Id.*

If the elements of the defendant's crime of conviction criminalizes a "greater swath of conduct than the elements of the relevant [Guidelines] offense" [*Mathis*, 136 S. Ct. at 2251] . . . [T]his "mismatch of elements" means that his conviction for the knowing possession with intent to deliver is not a controlled substance offense under the Guidelines. *Id.* That prior conviction cannot serve as a predicate offense under the Career Offender Guideline provision, which is § 4B1.1. *Id.*

In this case, the District Court erred in determining that Olson was a a career offender within the meaning of USSG § 4B1.1(a), which provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Here, Olson was over 18 years of age when he committed this offense, and it was a "controlled substance offense" within the meaning of USSG § 4B1.1(a). His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence." The PSR construed USSG § 4B1.2, which defines a "controlled substance offense" and a "crime of violence."

21

In this case, on September 25, 2015, at the Re-arraignment Hearing, Olson pled guilty to Counts 1 and 2 of the Indictment. See Doc. 46. The PSR deemed Olson as a career offender. As such, the Court adopted the factual contents of the PSR – a Total Offense Level of 34, in Criminal History Category VI, establishing a sentencing range of 262 to 327 months. The Court thought that the career offender enhancement was correctly calculated but the end result overstated Olson's criminal history, therefore, Judge Godbey sentenced Olson to a total term of 180 months, 8 years of supervised release, and a Mandatory Special Assessment Fee of $200. See Doc. 64.

Olson was sentenced as a career offender because before he was convicted in federal court of the present offense, he committed the following prior convictions:

(1)    In 2004: Possession for Sale of a Controlled Substance (he had 301 Grams of Methamphetamine and 3.75 Gallons of a GHP Analogue), in California. He got a probated sentence.

(2)    In 2005: Possession for Sale of a Controlled Substance (he was caught at the airport in California with a Half Pound of Methamphetamine taped to his legs). He was given a probated sentence which was later revoked.

(3)    In 2005: Possession for Sale of a Controlled Substance, to wit: Gamma Hydroxybutyric (GHB) and Possession of a Controlled Substance, to wit: Methamphetamine, in cause number C0193566, in the Superior Court of California, County of San Diego, offense concluded on or about September 6, 2005, judgment entered December 8, 2005.

Here, Olson contends that none of his prior convictions of Possession for Sale of Methamphetamine in violation of California Health & Safety Code § 11378 qualifies as a "controlled substance offense" under the § 4B1.1 guidelines.

In determining whether a prior conviction is included within an offense defined or enumerated in the Guidelines, courts have generally looked only to the elements of the prior offense [the "categorical approach"], not to the actual conduct of the defendant in committing the offense ["modified categorical approach"]. The Eleventh Circuit employs the so-called "categorical approach." See *Donawa v. U.S. Attorney Gen.*, 735 F.3d 1275 (11th Cir. 2013). In *Donawa*, the defendant, a native and citizen of Antigua, petitioned for review of the BIA's affirmance of an IJ's determination that he was not eligible for cancellation of removal because he committed an aggravated felony. The Court concluded that Fla. Stat. § 893.13(1)(a)(2), as amended by Fla. Stat. § 893.101, did not qualify as a drug trafficking aggravated felony under the categorical approach. The Court further concluded as well that it would be improper to engage the modified categorical approach for this statute because it is not divisible within the meaning of *Descamps*. Therefore, Petitioner and others convicted under this statute could still be able to meet their burden to demonstrate eligibility for cancellation of removal, and should be given a chance to shoulder that burden. Accordingly, the Court granted the petition, vacating and remanding for further proceedings.

### *Possession for Sale of a Controlled Substance*

The California statute of conviction, California Health & Safety Code Section 11378, provides that a person commits an offense if he or she: (1) "possessed crystal meth or another prohibited controlled substance;" (2) "knew that he or she possessed a drug; (3) "knew that the drug was a controlled substance;" (4) "possessed enough of the drug to sell it for consumption;" and (5) "possessed the drug with the specific intent to sell it." See Judicial Council of California Criminal Jury Instructions (CALCRIM) 2016, Instruction 2304 -- Health & Safety Code 11378 Possession of Methamphetamine for Sale.

Section 4B1.2 of the Guidelines defines a controlled substance offense as follows:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. USSG § 4B1.2(b).

California's criminal law defines "possession" in three ways: "actual," "constructive," or "joint" possession. "Actual" possession usually means that you were holding the drugs or they were in something you were wearing or carrying--i.e., you physically possessed the methamphetamine. "Constructive" possession means the crystal meth was in a location over which you exercised control (either directly or

through another person). "Joint" possession simply means that you shared actual or constructive possession with one or more other people.

See *United States v. Ocampo-Estrada*, (No. 15-50471) ( 9th Cir. 2017), the panel held that California Health & Safety Code § 11378 is a divisible statute that is susceptible to the modified categorical approach. The panel held that using the modified categorical approach, the government failed to demonstrate that the defendant's § 11378 conviction was based on a guilty plea to a controlled-substance element that is included within the "felony drug offense" definition set forth in 21 U.S.C. § 802(44). The panel therefore concluded that the defendant's prior conviction does not qualify as a felony drug offense that would enhance his statutory mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). The Ninth Circuit affirmed *Ocampo-Estrada*'s conviction for conspiracy to distribute methamphetamine, vacated his sentence, and remanded for resentencing.

To determine whether Olson's conviction under California Health & Safety Code section 11378 would qualify as a "controlled substance offense," we need to look to the statutory elements under which he was previously convicted, rather than the underlying conduct or facts giving rise to that conviction. See *Gomez-Perez v. Lynch*, 829 F.3d 323 (5th Cir. 2016); *United States v. Tanksley*, (No. 15-11078) (5th Cir. Jan. 18, 2017) (applying the categorical approach to the "controlled substance

offense" definition). This analysis requires a categorical comparison between the predicate offense of conviction and the federal definition. First, "we ask whether the statute of conviction is a categorical match to the generic predicate offense; that is, if the statute of conviction criminalizes only as much (or less) conduct than the generic offense." *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014). The parties do not dispute that the statute of conviction is "overbroad." See *id.* Thus, we next "ask if the statute of conviction's comparatively 'overbroad' element is divisible." *Id.* If a predicate statute is divisible—i.e., it lists alternative elemental versions of the offense within the same statute, rather than simply separate means for committing a single offense—then the modified categorical approach is used to determine which elemental version of the offense was committed. See *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). In such a case, "a sentencing court looks to a limited class of documents" from the record of a prior conviction to determine which version of the offense was the basis for that conviction. *Id.* (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)). The limited class of documents includes "the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26. In the context of a guilty plea, that inquiry is

"limited to assessing whether the defendant 'necessarily admitted' the elements of the particular statutory alternative that is a categorical match" with the federal definition. See *Descamps v. United States*, 133 S. Ct. 2276, 2284 (2013)). With this in mind, the threshold question then is whether California Health & Safety Code Section 11378 is a divisible statute.

In *United States v. MartinezLopez*, — F.3d —, No. 14-50014, 2017 WL 3203552, at *5 (9th Cir. July 28, 2017) (en banc), the *en banc* Court recently held that a similar statute, California Health & Safety Code Section 11352, is divisible with respect to its controlled substance requirement. In other words, the controlled substances referenced in § 11352 are treated as listing separate offenses, rather than merely listing separate means of committing a single offense. The rationale of *Martinez-Lopez* applies with equal force to § 11378, the statute before us. *Martinez-Lopez* relied principally on a California Supreme Court decision, *In re Adams*, 536 P.2d 473, 479 (Cal. 1975), which implicitly approved of multiple convictions under a single drug statute when the conduct involved different types of drugs. 2017 WL 3203552, at *5 ("As a result of *Adams* and its progeny, defendants are routinely subjected to multiple convictions under a single statute for a single act as it relates to multiple controlled substances."). That means that the particular drug at issue is not an alternative means of committing a single offense, but in fact

constitutes a distinct offense. *Id.* This principle logically extends past § 11352 to other California drug laws that criminalize an activity relating to other referenced controlled substances including § 11378.4. *Martinez-Lopez* also pointed out that California jury instructions require a jury to fill in a blank identifying the controlled substance implicated under § 11352. 2017 WL 3203552, at *5. So too for § 11378. Judicial Council of California Criminal Jury Instructions (CALCRIM) 2302. Finally, the Court's citation to scholarly commentary on California law—that "'[a] specified controlled substance' [is] an element common to all criminal drug offenses"—applies to § 11378 as it does to many other California criminal drug laws. 2017 WL 3203552, at *5 (quoting 2 Witkin, Cal. Crim. Law § 102(1)(a) (4th ed. 2012)). Thus, as a simple extension of *Martinez-Lopez*'s logic to a different but similarly structured statute, the Ninth Circuit hold that § 11378 is also divisible. This holding enables sentencing courts to use the modified categorical approach to determine which controlled-substance element necessarily formed the basis of an offender's prior conviction under § 11378.

Looking to the "limited class of documents" from the record of the prior conviction, *Mathis*, 136 S. Ct. at 2249, there is simply no indication that Olson "possessed enough of the drug to sell it for consumption" nor "possessed the drug with the specific intent to sell it" element Olson pleaded guilty to as part of his §

11378 conviction. The United States shoulders the burden to prove a prior conviction

qualifies as a felony drug offense, see *United States v. Vickers*, (No. 07-10767) (5th

Cir. 2008), but here the government's proof is inadequate. The government offers

from the record of conviction only the abstract of judgment and the state-court

minutes from the pronouncement of judgment, but neither document answers the

central question: whether Olson pleaded guilty to "possessed enough of the drug to

sell it for consumption" or "possessed the drug with the specific intent to sell it"

element of § 11378, which is encompassed by the federal "felony drug offense"

definition in 21 U.S.C. § 802(44).

The issue in this case is that Olson's statement made in the instant case appears

in a document that is outside the "limited class of documents" from the record of a

prior conviction upon which a sentencing court may rely to determine which version

of an offense was the basis for a prior conviction. *Mathis*, 136 S. Ct. at 2249. We

cannot assume from Olson's statement here that his § 11378 conviction was

predicated on a plea of guilty to the "possessed enough of the drug to sell it for

consumption" or "possessed the drug with the specific intent to sell it" element of

methamphetamine in particular. To do so would clash with the Supreme Court's

"demand for certainty" when attempting to match a predicate offense with a federal

statute. *Shepard*, 544 U.S. at 21. In fact, the Supreme Court has expressly forbidden

reliance upon the underlying facts of a prior conviction to determine whether the prior offense categorically matches the federal statute at issue. *Descamps*, 133 S. Ct. at 2287 (a sentencing court cannot "discover what the defendant actually did" and then use those discovered facts to establish a categorical match); see also *SahagunGallegos*,782 F.3d at 1100–01 (same).

With no judicially noticeable documents from the record of conviction that answer the question, Olson argues that the District Court has failed to demonstrate that his § 11378 conviction was based on a guilty plea to a "possessed enough of the drug to sell it for consumption" or "possessed the drug with the specific intent to sell it" element that is included within the federal "felony drug offense" definition. Accordingly, we cannot say that Olson's prior conviction categorically qualified as a felony drug offense. The sentence therefore should be vacated.

Without his career offender enhancement, Olson's Total Offense Level would have been level 27 in Criminal History Category V, which yields an advisory Guideline range of 120 to 150 months imprisonment, a significantly less harsh guideline range.

**C.**    **In Light of *Collins v. Virginia*, 584 U.S. ___ (2018), the Automobile Exception to the Fourth Amendment Does Not Permit A Police Officer to Enter the Curtilage of A Home in Order to Search A Vehicle Parked Therein, Uninvited and Without A Warrant.**

Olson's case started with the police coming to his downtown Dallas condo high-rise (15th floor) to locate and examine the rims on his Mercedes. This initial event took place many days before the actual day the Detectives showed up with search and seizure warrant for the aforementioned automobile and the day Olson was arrested. During the initial investigation (without a warrant/invitation or notice to Olson), the Detectives entered the secured, private, underground parking garage where Olson's vehicle was parked. Olson was renting the space from another homeowner in a private deal; no one except Olson and the other party knew the exact location of the vehicle; even the building management was unaware of its location. The Detectives had to look around to locate the vehicle on the third level down. This is a gated, high security, signage posted "homeowners only" situation. The Detectives then examined the vehicle and the wheel rims for serial numbers which there are none.

The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." This case arises at the intersection of two components of the Court's Fourth Amendment jurisprudence: the automobile exception to the warrant requirement and the protection extended to the curtilage of a home.

Like the automobile exception, the Fourth Amendment's protection of curtilage has long been black letter law. "[W]hen it comes to the Fourth Amendment, the home is first among equals." *Florida v. Jardines*, 569 U. S. 1, 6 (2013). "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Ibid.* (quoting *Silverman v. United States*, 365 U. S. 505, 511 (1961)). To give full practical effect to that right, the Court considers curtilage—"the area 'immediately surrounding and associated with the home' "—to be " 'part of the home itself for Fourth Amendment purposes.' " *Jardines*, 569 U. S., at 6 (quoting *Oliver v. United States*, 466 U. S. 170, 180 (1984)). "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U. S. 207, 212–213 (1986).

When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. *Jardines*, 569 U. S., at 11. Such conduct thus is presumptively unreasonable absent a warrant.

In *Collins v. Virginia*, 584 U.S. ___ (2018), the Supreme Court concluded that the automobile exception does not permit an officer without a warrant to enter a home

or its curtilage in order to search a vehicle therein. The Supreme Court leave for resolution on remand whether Officer Rhodes' warrantless intrusion on the curtilage of Collins' house may have been reasonable on a different basis, such as the exigent circumstances exception to the warrant requirement. The judgment of the Supreme Court of Virginia was therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

If not but for this illegal search of the curtilage of Olson's privately owned condominium, none of what followed would have happened. The Motion to Suppress documents outline the dates of this search and that it actually happened.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Olson's sentence should be vacated for resentencing without the career offender and 851 enhancements. In the alternative, an evidentiary hearing should be held so that Olson may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: June _12_, 2018

ROGER HARRY OLSON, II
REG. NO. 49151-177
USP ATLANTA
U.S. PENITENTIARY
P.O. BOX 150160
ATLANTA, GA  30315
Appearing *Pro Se*

## DECLARATION OF ROGER HARRY OLSON, II

    I, Roger Harry Olson, II, declarant herein, declare and attest to the facts in the above and foregoing Memorandum of Law in Support of Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: June _12_, 2018

ROGER HARRY OLSON, II

34

Respectfully submitted,

Dated: June ___, 2018

ROGER HARRY OLSON, II
REG. NO. 49151-177
FCI OAKDALE I
FEDERAL CORR. INSTITUTION
P.O. BOX 5000
OAKDALE, LA  71463
Appearing *Pro Se*

## DECLARATION OF ROGER HARRY OLSON, II

I, Roger Harry Olson, II, declarant herein, declare and attest to the facts in the above and foregoing Memorandum of Law in Support of Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: June ___,2018

ROGER HARRY OLSON, II

34