IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 1 9 2018

CLERK, U.S. DISTRICT COURT
By_____
Deputy

ROGER HARRY OLSON, II,              §

            Movant,              §

v.                                 §

UNITED STATES OF AMERICA,          §

            Respondent,              §

                         §    Civ. #3:18-CV-1530-N-BN

## MOVANT'S RESPONSE TO SHOW CAUSE ORDER

COMES NOW, Roger Olson, II, Movant/pro se, and respectfully submits his response to the Court's order to show cause as to why Movant's § 2255 motion to vacate (herein "motion to vacate") should not be summarily dismissed as untimely.

## INTRODUCTION

On or about October of 2015, Movant pled guilty to two drug offenses and was sentenced to 180 months. Movant appealed. On February 20, 2017, the Court Of Appeals affirmed. Movant did not seek certiorari. The 90 day period to seek certiorari expired on May 21, 2017. Movant's one year statutory deadline to file his motion to vacate expired on May 21, 2018. Movant's motion to vacate was filed on June 12, 2018 (i.e. approximately 20 days past Movant's apparent one year dealine). Absent equitable tolling Movant's § 2255 motion to vacate is untimely. Movant contends, however, and will establish infra, that extraordinary circumstances exist here that warrant equitable tolling.

## DISCUSSION

Shortly after the Appeals Court affirmed, Movant and his parents made

1

the decision to seek professional legal assistance for the filing of Movant's motion to vacate. By March of 2017 Movant became aware of and began communicating with American Leading Edge Research Team (herein "ALERT") who represented themselves to Movant as expert attorneys and paralegals who specialize in post-conviction litigation. By April of 2017 ALERT had been in regular communication with both Movant's father and Movant, and forwarded their contract agreement to Movant's father. Agreement (Exhibit "A-1").

ALERT's account representative, Alexa Wade, then instructed Movant's father on the method and mode of their $2,250 fee (Message, Alexa Wade to Movant's father (Exhibit "A-2")), which Movant's father forwarded to ALERT via FedEx. See, Receipt of Payment (Exhibit "B")(acknowledging the receipt of $2,250 on 5/22/17 for paralegal services for Movant, received by customer service supervisor, Kelly Davis). ALERT then forwarded Movant an instruction letter and request for detailed information and documents. See, Letter, undated (Exhibit "C")(received by Movant on 5/26/17). In the instruction letter ALERT informed that George Carlton of Alabama would be "writing [Movant's] brief," which Movant would be able to review and send back "one time" for "changes" or "correction[s]." Id., p. 1, ¶ 3.

However, without the benefit of first receiving the requested documents and information, ALERT forwarded Movant, within approximately two weeks from the date they received their fees, the motion to vacate brief, which Movant refused to file - the brief raising a sole boiler-plate claim going towards the career offender adjustment without references to the facts or circumstances of Movant's priors that form the career adjustment.

What ensued is a series of deceptions and mis-representations by ALERT that directly affected the filing and timeliness of Movant's motion to vacate, as follows.

1. Along with the boiler-plate brief ALERT forwarded a boiler-plate (undated) cover letter from Jocelyn Adkins which purports, among other things, that Ms. Adkins is an attorney who reviewed the brief for grammar and the legal aspects of Movant's case. Letter, Jocelyn Adkins to Movant (Exhibit "D"). However, this is literally impossible as Movant had not yet sent ALERT Movant's files and notes. Further, Movant has not, since, heard from or about Ms. Adkins from ALERT.

2. On 9/6/17 Movant sent a message regarding the brief and setting forth detailed notes and facts going towards the merits, which was never acknowledged. Message, Movant to Tom Green (ALERT account representative) (Exhibit "E").

3. In light of Movant's repeated efforts to contact Tom Green, Movant's father reaches Ms. Wade, who replies on 10/3/17 to Movant's father that Tom Green will be handling Movant's case, and to forward any edits to the brief to him, which he (Mr. Green) will in turn forward to "the paralegals assigned" to Movant's case. Message, Alexa Wade to Movant's father (Exhibit "F"); see also, Message, Movant's father to Movant (Exhibit "G")(explaining his confusion and not understanding what's going on between Movant and Tom Green).

4. On 10/5/17 Movant sends a panicked message demonstrating his fears and concerns about the brief and whether it will ever be amended/corrected/completed, and whether he would ever be able to reach someone who could help him. Message, Movant to ALERT's main blog site (Exhibit "H") (which Movant copied to his father).

5. After many months (approximately six to seven months) of frantic messaging from both Movant and his father, Tom Green finally responds on 5/10/18. Messages go back and forth: Movant expressing great fears about ALERT, Movant being prevented from participating or suggesting any arguments

or grounds for the brief; ALERT dodging and denying that Movant sent the 9/6/17 message detailing the facts of the case, and complaining about Movant's anxiety about being late. Messages, Movant and Tom Green (Exhibit "I").

6. On 5/18/18 Tom Green assuring Movant not to worry because, as they had previously informed, ALERT had "until June 14th to file the brief." Messages, Movant and Tom Green (Exhibit "J").

7. From 5/18/18 to 5/30/18 Movant is still worried about timeliness and Tom Green continues to assure that they have until June 14th to file the brief. Messages, Movant and Tom Green (Exhibit "K").

8. On 6/11/18 Movant continues to worry about timeliness and Tom Green continues to assure of its timeliness. Messages, Movant and Tom Green (Exhibit "L").

9. By June 12, 2018, ALERT files the brief on behalf of Movant and the Court issues its show cause order for Movant to show cause as to why the § 2255 motion to vacate should not be denied as untimely. Movant sends a message informing Tom Green of the Court's action and that Movant has learned that ALERT's time calculation was from the date the mandate issued and not the date of which the conviction became final. Tom Green admits that ALERT was at fault. Messages, Movant and Tom Green (Exhibit "M").

10. ALERT then forwards Movant a response to Court's show cause order for Movant to file with the Court. The response does not state that ALERT led Movant on about his brief being written and/or overseen by a team of attorneys and paralegals. Nor does the response state that ALERT dodged Movant for months at a time, neglected/avoided the merits, erroneously advised on timeliness, and caused the brief to be filed past AEDPA's one year time limit. Further, the response goes as far as deliberately intending to mislead the Court to believe that ALERT was simply a typing firm and

4

played no role in the late filing of the brief. Response, ALERT's proposed response, p. 3 (Exhibit "N").

## ARGUMENT

As an initial matter it must be noted that § 2255's one year deadline is not a jurisdictional bar and can, therefore, be equitably tolled in "rare and exceptional circumstances." United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000). Movant submits that the case at bar is such a case.

From the onset ALERT rushed to obtain their fee with assurances of a competent brief written by an attorney. Specifically, ALERT informing that Movant's brief will be written by George Carlton (Welcome Letter, ¶ 3 (Exhibit "C")), an attorney who routinely wins "large judgment" law suits against the BOP. Message, Tom Green to Movant, p. 2 (Exhibit "I")(Green attempting to explain to Movant that the BOP has been blocking inmates from communicating with George Carlton, hence, the block placed on Movant's contact list with Carlton).

However, instead of competent attorneys and paralegals, Movant has only been brushed off on individuals (supposedly account representatives) who seemingly know nothing of Movant's case and claimed to have misplaced the 3/5/18 message Movant sent informing about the details/facts of the case. Messages, Movant and Tom Green (Exhibit "K"). And, who either deliberately misled Movant about the timeliness of the petition or had no knowledge of the gatekeeping principles associated with AEDPA's one year deadline. Specifically, Tom Green of ALERT (and indeed all of ALERT) dodging Movant for months (supra, pp 3-4), and continuely assuring (albeit falsely) that the petition would be timely. See, e.g., Exhibit "J" (assuring timeliness up until June 14); Exhibit "L" (assuring that ALERT's paralegals are working everything out to have the petition filed "in a timely manner"). Here, whether

affirmative misadvice, or deliberate deception - either situation warrants tolling. I.e., United States v. Wynn, 292 F.3d 226, 230 (5th Cir. 2002) (deliberate deception by counsel regarding timeliness presented rare and extraordinary circumstances that warranted tolling); and Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002)(affirmation misadvice presented extraordinary circumstances that warranted tolling).

Moreover, this is not the run-of-the-mill case where attorney dupes client, but a complicated situation where a purported paralegal firm (claiming to be guided by attorneys) dupes client and client's father. Wynn, 292 F.3d at pp 230-31 (remanding for a hearing on attorney's misrepresentations to client's father to determine whether tolling should apply). Here, the deception ran deep in that ALERT drew Movant's father right in, quickly took their funds (without seeking Movant's father's signature on ALERT's contract), and deceived him as well as regarding timeliness of the petition. Affidavit, Roger Harry Olson (Movant's father), ¶¶ 4-5 (Exhibit "P").

<h3 align="center">CONCLUSION</h3>

Movant contends that there was no excuse for ALERT's conduct. Whether ALERT has committed a crime, though, is not the subject of this motion. Nonetheless, it was necessary to inform the Court of ALERT's conduct. Moreover, even in the face of the messages and evidence here ALERT attempts to further misrepresent the facts in its proposed response that ALERT intended Movant to file - i.e., (i) that because Movant is "filing pro se" Movant believed that the date of the mandate was the date AEDPA's gatekeeping time clock began, (ii) that Movant hired a "typing services company" to assist him, and (iii) that Movant requested the "typing services company" to mail his petition. See, ALERT's proposed response to show cause order, p.3 (Exhibit "N"). However, none of which are true - that is:

(i)     Movant never knew the legal significance between the date of the appellate denial and the date of the issuance of the mandate until an experienced prison writ-writer informed so. Movant relied solely on ALERT, who got it wrong. See, Message (Exhibit "M") (ALERT admitting their error).

(ii)     Movant did not hire ALERT as a "typing service." Further, nowhere in any of the messages, the contract, or the introduction letter is any reference to a "typing service" made. Instead, the only service referenced made by ALERT go to the paralegals and attorneys to research and write the brief.

(iii)     Movant never requested ALERT to make the filing; but, if Movant had, he would not have requested ALERT to misrepresent the fact that it was ALERT making the mailing on Movant's behalf.

Movant contends that he has met his burden to show cause as to why equitable tolling is warranted in this case to consider Movant's § 2255 motion and memorandum timely and welcomes (indeed requests) a hearing on the matter should the Court harbor any doubts as to the facts alleged herein. Cf., Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir. 2000) (remanding to determine whether the petitioner can establish facts in support of his allegations going towards timeliness and tolling). As such Movant reminds the Court that the statute of limitations bearing on timeliness should not be applied "too harshly" especially here where it is the dismissal of a "first" petition that is at stake. Patterson, 211 F.3d at p. 931.

Further, Movant did all that he could do. He hired a reputable firm (so Movant believed), and questioned/pursued his rights diligently to the best of his, and his father's ability, even in the face of the nefarious conduct of ALERT.

Movant could not have forseen the lack of knowledge and experience from

the team of so-called expert paralegals and attorneys that he placed his trust in. Indeed, Movant did all that he could possibly do to diligently pursue his rights and humbly reminds the court that the "required diligence" here "is 'reasonable diligence,' not 'maximum feasible diligence.'" Jones v. Stephens, 541 F.Appx 499, 503 (5th Cir. 2013) (quoting, Holland v. Florida, 177 L.Ed 2d 130, 148 (2010)).

## RELIEF SOUGHT

Premises considered and for good cause shown, Movant humbly seeks the Court not dismiss as untimely Movant's § 2255 motion and memorandum, but rather, to consider it timely and order the government to answer. Or, in the alternative to remand for a hearing into the issue for the taking of evidence and so that the Court can hear firsthand from Movant and his father. Wynn, supra.

Dated:  7/13/18

Respectfully Submitted:

Roger Harry Olson, II
Reg. #49151-177
FCI-1 Oakdale
P.O. Box 5000
Oakdale, LA 71463

## CERTIFICATE OF OATH

I, Roger Harry Olson, II, hereby certify and swear under penalty of perjury, 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and executed for no improper purposes.

Dated:  7/13/18

Executed:

Roger Harry Olson, II

## CERTIFICATE OF SERVICE

I, Roger Harry Olson, II, hereby certify and swear under penalty of perjury, 28 U.S.C. 1746, that I have forwarded one (1) original two (2) copies of the

foregoing "Response" to the Court's Show Cause Order to the Clerk of the Court, U.S. District Court, Northern District of Texas, Dallas Division, 1100 Commerce St., Rm 1452, Dallas, TX, 75242, by depositing the same in the designated receptacle for outgoing legal mail at my prison of confinement, first-class postage prepaid, on this __13th__ day of July, 2018.

Roger Harry Olson, II

## ALERT2020 SERVICE AGREEMENT

This Service Agreement ("Agreement") between ALERT2020 a subsidiary of American Leading Edge Research Team ("ALERT") located at 30 N. Gould Street, Suite 5787, Sheridan, Wyoming 82801, and Federal Prisoner, Roger H ("Olson II"), Registration Number 49151-177, who is currently incarcerated at USP Atlanta. Mr. Olson II's Guarantor is Mr. Roger Olson, who will sign as Guarantor for the express purpose of the completion of this Agreement.

1. The staff of ALERT will be preparing documents based on ALERT'S legal research for Olson II who will be filing same *pro se* with the federal court system in an effort to gain release or a shorter sentence than he is presently serving. Olson II has agreed to pay ALERT a total non-refundable fee of <u>$2,250.00</u>. This will be paid in <u>one</u> incremental payment(s) of <u>$2,250.00</u>. ALERT agrees to use its best efforts to argue Olson II's case with supporting precedent case law which is applicable to his/her case. **By signing this Agreement, Olson II agrees that there is no guarantee as to the success or outcome of his/her case. It is further understood by Olson II that there will not be any refund of any kind if this effort is unsuccessful. Only in exceptional circumstances will ALERT's management consider refunds and only ALERT'S management will determine whether a refund should be issued as well as when the refund will be paid. If there is any disagreement with this refund policy then neither Olson II nor his/her Guarantor should sign this document and/or pay the above-noted fee.**

2. After ALERT is retained, a welcome package will be mailed to Olson II, which contains a detailed questionnaire. It is essential that Olson II complete the questionnaire and mail it back to ALERT at the address posted in the welcome packet as soon as possible. After receiving the Questionnaire, ALERT will consult with Olson II as to the specific type of Motion that will be filed with the court to best achieve the desired result of a shorter sentence. ALERT will then write a first draft of the document and mail it to Olson II to edit if he so desires.

3. If Olson II wishes to make changed, edits, additions or deletions to the first draft, he may make these changes **ONE TIME** and ALERT will incorporate those changes into a final draft.

4. Before mailing the final draft from ALERT to Olson II, one of ALERT's attorneys will read and review the final draft prior to it being sent to Olson II to assure that the filing has been reviewed by a licensed attorney. A verification of the review by said attorney will be signed and attached to the final draft and will be received by Olson II with the final draft. **Note: Legal review does not guarantee that sentence relief or verdict relief will be granted by any court.**

5. ALERT also agrees to write a Reply for Olson II to any government response in this case.

6. Olson II agrees to notify ALERT in regard all court letters and/or documentation sent to him by the court immediately when received by U.S. Mail in order to allow ALERT to write a response, if necessary.

7. Olson II acknowledges and agrees that should any dispute whatsoever arise in this matter that such will be settled by arbitration in the location chosen by ALERT.

8. This Agreement is the whole Agreement entered into by the above parties and can only be changed in writing and signed by all parties.

DATE: _____

_____
Roger Olson
Guarantor for
Roger H. Olson II

DATE: _____

_____
Alexa Wade
Account Representative for
ALERT2020

2

**Exhibit "A-2"**

## Roger Olson

| | |
|---|---|
| **From:** | OLSON II ROGER HARRY (49151177) |
| **Sent Date:** | Friday, May 19, 2017 11:50 AM |
| **To:** | rogerolson40@gmail.com |
| **Subject:** | RE: Leading Edge |

Send the check please.
-----Olson, Roger on 5/11/2017 8:06 PM wrote:

>

Dear Chip

I am going to write Leading Edge a Check for the amount of $2250.00 and mail it FEDEX overnight to their mailing address. They pay for the overnight charge. I will take the funds from your Account and transfer it to my account so I can write the Check. When I send the check I will also send them your mailing address. It would be good if you could set it up so the Paralegal can communicate with you via corrLinks I don't know how you do that. The Paralegal's name is Kelly Davis her email address is kelly.davis1024@gmail.com.

I won't send the check until you say OK.

I am attaching leading edge's payment info:

Hello Mr. Olson,

Of course, I will explain the process to you! As we had mentioned before Mathis-Hinkle has a one year filing deadline due in June. By proceeding the only available payment plan option we have at this time is the fee of $2,250.00 to be paid in full because we need to release the draft brief to him as soon as possible for any revisions he may want to incorporate within the document itself. When we first reached out to one another, I see that was done in March and I had given you payment plan options. Those payment options were applicable then because we still had 3 months to have payment received by the deadline so we could release that draft to Mr. Olson II. I apologize if this is an inconvenience as time is of the essence to get documents sent, released and received with no interruptions.

If you would like to proceed these are the available options we have to receive payment:

We have the following bank accounts for our clients convenience with BBVA Compass, Wells Fargo and Woodforest Bank. Payments can be issued using a check payable to our treasurer of the company (George Alexander). If Compass Bank is used, the check can be payable to Leading Edge. We ask for a photo of the receipt so we can note this payment. This photo can be sent as a text to my direct line or by email. This allows me to send all info to our paralegals and issue the welcome packet to be sent ASAP.

We also have a FedEx account number where you can send a check payable to Leading Edge. This check can be sent using standard overnight delivery. Our mailing address is Leading Edge Research Team, 2701 Mall Drive #7-140, Florence, AL 35630. We ask that the tracking number be sent via text or email as well. Same procedure as above on forwarding Mr. Olson II's info to paralegals and issuing the welcome packet.

Please let me know which option will work best for you so I can give you the proper account number. I have also attached Leading Edge's agreement for your review and records. As far as CorrLinks is concerned, you can continue to speak with his assigned paralegal through email after he is retained or Mr. Olson II would like to create his CorrLinks account to speak with him/her through this process, it may be more efficient with this time restriction. Also, please provide me with his mailing address. I would like to verify this information in comparison to what the federal website shows as sometimes they are PO Box's instead of the prisons street address. He will receive all instructions from our paralegals and where to file this motion as a pro se litigant. If their are any issues we can file this brief on his behalf with his permission. Please let me know if you have any other questions!

Best Regards,

Alexa Wade
Leading Edge Research Team
leadingedgeresearchteam.com
awlert140@gmail.com

**Exhibit "B"**

## LEADING EDGE RESEARCH TEAM
### 2701 MALL DRIVE, SUITE 7-140
### FLORENCE, ALABAMA 35630
### Customer Service 256-324-7404

### RECEIPT

**RECEIVED** a full payment of $2,250, on May 22, 2017, from Mr. Roger Olson for Roger Harry Olson II's paralegal work.

Sincerely,

*Kelly Davis*
Kelly Davis
Customer Service Supervisor

Hi there,

My name is Kelly Davis and I am the Customer Care Manager at Leading Edge Research Team. Please mail all paperwork to my attention at the following address:

**Leading Edge Research Team**
Attn: Kelly Davis
2701 W Mall Drive, Suite 7-140
Florence, AL 35630

I will be your person of contact should you have questions or just want an update on your case. You can reach me by phone at 256-324-7404. If I do not answer, that means that I am either away from my desk or on another line, just leave a message if you are able, or call back in a few minutes. If I don't know the answer to your question, I will ask George Carlton and get back with you. If you have email capabilities, please add me to your Corrlinks so that we can also communicate that way. My email address is Kelly.Davis1024@gmail.com.

The way that the process works, is you mail all of the paperwork that is included in this packet, back to me. You may answer the questions on the blank sheet of paper and add paper if needed. I think there is room to answer the 8 questions, that are on a page by themselves, out beside the questions. Include any other papers that you think would be to your benefit if it was included in the motion. It's better if you don't send originals, because sometimes they get lost in the mail. If you're able to make copies please send all of this information to me. I will then make copies and send them to George Carlton in Alabama, who is the one that will be writing your brief. He will write your brief and send you a copy to proofread. **If you agree with everything he has written in your brief, you sign it and send it to the courts. If you don't agree with something or would like for something to be added to your brief, make the changes on one of the copies and send it back to George or myself. He will make the one time correction on your brief and send it back to you to proofread. If you are pleased, then you sign it and send it to the courts.**

**IMPORTANT:** You will be the first one to get a response from the government. **Please let us know as soon as you get this response so we can look it up on Pacer.** We only have a certain number of days to respond, and if you don't let us know when you have received something from the government, we will not know. It's very important that either you or someone in your family contacts us as soon as you have received anything from the Court. You don't have to send in the paperwork, because we can look it up on Pacer. Just make sure you let us know.

I look forward to working with you, and or your family in getting you some relief. I pray that you get the best of results from the motions that you will be filing. Remember, I am here if you need me for anything, please call.


Praying for you,


Kelly Davis
Leading Edge Research Team
Customer Care Manager
Phone No.: 256-324-7404
Email: Kelly.Davis1024@gmail.com

**Exhibit "D"**

Jocelyn Adkins
Attorney at Law
245 A PMB 303
Savannah, TN 38372

Dear **Roger Harry Olson II**

I have reviewed your case for typographical, grammatical, clerical errors, and the legal aspects of your case and have made the appropriate corrections.   You will be filing this attornments with the Court soon.  Should the Court order that a hearing be held you have the option of accepting the attorney appointed by the Court (at the Court's Expense) or of hiring an attorney.   If you choose to hire an attorney to represent you at that hearing or to represent you in any other aspect of your case I hope you will contact me and allow me to quote you a price to represent you.

Thank you,

*Jocelyn Adkins*

Jocelyn Adkins

TRULINCS 49151177 - OLSON II, ROGER HARRY - Unit: ATL-A-C

---------------------------------------------------------------------------------------------

FROM: 49151177
TO: Green, Tom
SUBJECT: 2255
DATE: 09/06/2017 07:41:20 AM


I'm not sure what is the easiest or best way to compile and convey the information relevant and necessary to include in and complete the 2255 Leading Edge has already sent to my attention. I will communicate with you via email on this system being as clear, concise and brief as possible. I will put things in a logical order, but will not enumerate them specifically; the ultimate order and format in the Motion and its accompanying Memorandum of Law I will leave to you all - the professionals. In preparation of the initial draft, which I received on 06.15.2017, you were able to use the Record and I know you will continue in this manner; I don't believe you will require anything from me via US mail. I thank you in advance for taking the time to work with me through any confusion which might arise. I look forward to a final set of documents and hopefully the court granting some relief.

The conviction before you involves the seizure of my vehicle, the subsequent search of my apartment (without a search warrant) and the events of that incident. The record contains all the Motion To Suppress documents and should be consulted. The Motion To Suppress hearing was scheduled to last less then two hours: this was the time estimate requested by Judge Godbey at the beginning and given by the attorneys involved; the actual event took the entire day in Judge Godbey's courtroom and covered the testimony of the Detectives involved. Despite the testimony given by the Garland Police Detectives supporting the rule of law the Motion To Suppress Evidence was, of course, denied. Judge Godbey ruled at the end of the hearing instead of writing his decision. The Judge was very brief in his comments; the time was late and the day was over. There was no discussion regarding his ruling and nothing was said by my attorney or the AUSAs involved about appealing this decision.

Shortly after the day of the hearing my retained District Court Attorney, Mr. Mongaras, visited me at the Federal Detention Center where I was housed, located at Seagoville, Texas. During this professional visit my attorney informed me that the government was seeking to enhance my case with an 851. Please note that I was indicted in February of 2015 and the Motion To Suppress hearing took place in late August, 2015. The reason for the enhancement via 851 was, according to Mr. Mongaras, that the government, (AUSA Ms. Burns), was upset that I made them "prove" that their search and other issues were legal through the use of the Motion To Suppress. The issues raised in the Motion To Suppress were clearly flushed out in the hearing as can be seen in the record and the Brief filed for my Direct Appeal. It was completely retaliatory in nature. The government waited 8 months to decide I was subject to this enhanced penalty? At the time there was also a memorandum published by then Attorney General Eric Holder stating not to enhance low level drug crimes for low level offenders; I feel as though I met those parameters. Nonetheless, an 851 was filed which would have staggering effects on my sentencing range. I believe Mr. Mongaras was unaware of the effect the 851 would have on my PSR due to the interplay with the probation department's finding me a career offender. Mr. Mongaras never communicated that a forthcoming 360 month PSR was eminent. In fact, my criminal history was never thoroughly investigated until the time my PSR was made available. Although I have, according to the probation department, 3 prior predicate offenses that would qualify me for enhancement under the 851, I was never notified which one the government would rely upon. The enhancement was also included within my PSR - as well it never specified which prior it would rely upon. I question whether the notification was done correctly United States vs. Geozes in the 9th Circuit was recently decided with an 851 situation similar.

During this same professional visit at FDC Seagoville, Mr. Mongaras insisted that the only course of action at that point was to sign and file a Factual Resume pleading guilty to the indictment. By pleading guilty to the indictment as charged he informed me I would retain all of my rights to appeal my case including the Motion To Suppress issues and ruling. He stated I would have a very good direct appeal and the Fifth Circuit Court of Appeals could possibly overturn my case. How wrong he was. I was unaware that this was incorrect advice until I received the governments response to my Direct Appeal. Without reserving specifically the Motion To Suppress issue that issue was waived. The merits of my appeal could not be considered by the Fifth Circuit. My appeal was dead. At no time did I ever knowingly and willingly waive any of my rights to appeal; I had counsel and was not properly informed. The government, the court and the magistrate whom accepted my change of plea never admonished me regarding this huge issue! This seems so outside the spirit of the law: the scales of justice are not balanced.

Okay, that's that.

My criminal history calculation is also suspect and needs attention. One of my predicate offenses is eligible to be reduced to a misdemeanor in California via Proposition 47. I need help contacting San Diego Superior Court to have this done. My three prior predicate offenses in the State of California are all from the same thing: Health & Safety Code 11378. I was sentenced to the three felonies on the same day and all were to be served as consecutive sentences. These consecutive sentences were deemed non-violent drug offenses and subject to terms of 1/3 the then determinate sentence of 24 months. Consecutive

TRULINCS 49151177 - OLSON II, ROGER HARRY - Unit: ATL-A-C

--------------------------------------------------------------------------------------

sentences are have specific case law I have since learned and I would like further investigation into how these are treated at the Federal level. The time pronounced by the Judge at sentencing was therefore 8 months. Let me list the convictions and sentences:
SCD185469 (Count 1) - Committed to CDCR 8 months
SCD191472 (Count 1) - Committed to CDCR 8 months
SCD193566 (Count 1) - Committed to CDCR 24 months
              (Count 2) - Committed to CDCR 8 months
The second count of this conviction I received 8 months for as well, but this is the possession that is no longer a felony. Total time committed to CDCR was 48 months.
Having Sand Diego Superior Court open the last conviction (SCD193566) to reduce count 2 to a misdemeanor can be accomplished. What else can be done? There must be plenty we can ask the court to do since that conviction is back in court. There is notation in the plea colloquy of SCD193566 that that conviction is a probation violation. Would it be possible to have that case enumerated with one of or both of the cases preceding it as that sentence is actually violation time? I am a layman only, but isn't the goal to always get a conviction back into court with an issue or problem an then attack it full force from every angle? Is it also possible that because this one conviction has a defect requiring a change that perhaps the other two could have changes or be effected as well? Perhaps all three convictions are now questionable for many numerous reasons? All three convictions are within a years time. The first two convictions (SCD185469 and SCD191472) were both grants of probation. I only went to county jail for 62 days on SCD185469; no time incarcerated on SCD191472; SCD193566 resulted in CDCR commitment. I've heard the term joinder adjudication. I don't know what it means, but I believe it might be applicable to these three convictions. My criminal history is a big question that landed me all this time in Federal prison. It needs to be examined carefully and creatively defended. Not only does criminal history score effect your sentence, it also effects an inmates custody level. I am currently housed at Atlanta USP even with a minor nonviolent history due to my criminal history. Reducing my criminal history score would also reduce my custody level tremendously; being transferred to a lower custody institution would be wonderful.

This sums it up. I look forward to hearing from you soon.

Sincerely,
Roger Olson

**Exhibit "F"**

**From:** Alexa Wade
**Sent:** Tuesday, October 3, 2017 3:00 PM
**To:** Roger Olson
**Subject:** Leading Edge Research Team (ROGER HARRY OLSON II #49151-177)


Hello Mr. Olson,

Thank you for taking a moment to speak with me this evening. I was looking through our files and I wanted to ensure that Mr. Olson II's questions were answered if he has any because I did not see the 2255 motion we wrote was filed in the courts system. He may not have our new customer service representatives information where he could further contact us. Mr. Tom Green is our customer service rep who who answers questions regarding case status and updates. Also, if their are any edits that needs to be made to the 2255 motion that Mr. Olson II would like to change, Mr. Green forwards this information to the paralegals assigned to his case.

I see this motion was mailed to Mr. Olson II and delivered but was not filed and I am assuming he wanted to make corrections. Please have Mr. Olson II add Mr. Tom Green to his CorrLinks email (tglert661@gmail.com). Also, let me know what Mr. Olson II says if we need to issue another copy out to him for review. Feel free to email me any time so we can help him file this!

—
*Best Regards,*

*Alexa Wade*
*Leading Edge Research Team*
leadingedgeresearchteam.com
awlert140@gmail.com
(731) 412-8529


Virus-free. www.avast.com

Exhibit "G"

# Roger Olson

---

**From:**       rogerolson40@gmail.com

**Sent Date:**  Tuesday, October 3, 2017 5:31 PM

**To:**         ROGER HARRY OLSON II (49151177)

**Subject:**    Alexa Wade and your 2255 motion

Dear Son

I talked with Alexa, from Leading Edge, she wanted to know why your motion has not been filed. She said you need to communicate with Mr Tom Green who answers questions regarding case status and updates. Also, if there are any changes you need made. I don't know what is going on at your end. If you don't have Tom Green on your CorrLinks account you need to add him. (tglert661@gmail.com). Please let me know what is happening and How I can help you. Lets stay on top of this now and get it done. Alexa will help in any way she can but your questions should go to Tom Green so he can help and get this filed. Please respond as soon as possible to me so I know what is going on.

Love Your Dad

# Roger Olson

| | |
|---|---|
| **From:** | OLSON II ROGER HARRY (49151177) |
| **Sent Date:** | Thursday, October 5, 2017 7:51 AM |
| **To:** | rogerolson40@gmail.com |
| **Subject:** | Olson 2255 |

Dear Leading Edge,

I am a paid client of Leading Edge and have been waiting patiently for approximately one month to hear from Tom Green. I sent a few (2-3) emails to him with information regarding the forthcoming, revised 2255 I anticipate receiving sometime soon. I requested that Mr. Green acknowledge receipt of the information and to communicate with me via this system as necessary; to date I have received nothing.

I hired Leading Edge at the end of May, 2017 to complete my 2255. My family was assisted by Alexa Wade during our selection process and received, prompt, courteous service; we elected to retain Leading Edge due to her service. I received a Welcome Package from Kelly Davis. I received a 2255 about two weeks after the receipt of my Welcome Package. I informed Kelly Davis that the institution was locked down during the preparation of this first 2255, but that i had things to add, information to share and wanted to have the document revised. I would hold to the agreement as i understood things and send the information as directed and let Leading Edge do a revision. My contact information was changed from Kelly Davis to Tom Green; I was given his email address which I added and was accepted. I sent emails to Tom Green without success: this was the beginning of September, 2017. After waiting a couple weeks I sent George Carlton an email and received a response stating that Tom Green was in Houston, delayed due to the floods from the hurricanes. I am still waiting for Tom Green to acknowledge the information sent and for someone to work on this. I have sent lengthy emails to Tom Green. I CAN NOT resend them as this system will not allow that function: no copy, cut, paste, forward, resend. This system is fool proof in that it holds the information for a long time; he should be able to look back and find the information I have sent. It is very important regarding much more then just the 2255 Leading Edge initially prepared.

Please let me something soon. I am extremely disappointed; I have spent a considerable amount of money for nothing at this point.

Sincerely,
Roger Olson

TRULINCS 49151177 - OLSON II, ROGER HARRY - Unit: OAK-A-B

--------------------------------------------------------------------------------

FROM: Green, Tom
TO: 49151177
SUBJECT: RE: Wednesday
DATE: 05/10/2018 09:21:02 PM

HI Roger,

Wow, dude, i just read what i emailed you and its kinda harsh, sorry about that, really, i dont know what got into me?! but i guess if it gets us both out of that damn rut... still, didnt mean to be ... mean.

your input will be greatly appreciated.

thanks
tom green

ROGER HARRY OLSON II on 5/10/2018 11:51:18 AM wrote
Okay...give me until Monday and I will help out.

Thank You Tom,

Sincerely (and I mean it),
Roger
-----Green, Tom on 5/8/2018 9:51 PM wrote:

>

hi Roger,

we still got 6 weeks... like i said, we just have to get your case out of the rut it fell in.  a little push from you would help.  but it seems like you are in the same rut, repeating the same rant, over, and over and over, but not adding anything as to what direction the arguments should go, not how to write them, but what you think they should be, in plain language.

we've done this without you and you are not happy - i guess we will continue without your input  again.

thanks
tom green

ROGER HARRY OLSON II on 5/8/2018 7:08:19 PM wrote
Nothing we have talked about is being added to the initial 2255 you sent - correct? I just want to be clear that nothing further is going to happen until I US Mail something I don't have. With all that has happened I am completely dissatisfied with Leading Edge. I have a partially finished document that addresses only my Career Offender situation - which you all pulled from the record and prepared without my input. In fact, I wasn't even given the chance to "assist" in the Career Offender preparation. Then months went by and you discovered things weren't happening. You and I exchanged a few emails; we started to get things on track. Then the hurricane hit Houston and things stopped once again. We got connected through your Alabama office through Alexa Wade a second time and I US Mailed you what I wanted included in the 2255. Do you recall getting this letter? I have an email confirming your receipt and that "I forwarded this to the paralegals and they are working on your case." At this point I was feeling good about things. Well Tom, we are back to - what's happening? You respond that I have failed to do as instructed and nothing further is happening until you receive a document with corrections. I have no corrections to the Career Offender stuff. That part is great, but there is more to add. I know I only have one shot to file this thing. Again, we have discussed this and you are aware there are things to add.. Things that Leading Edge touts as "specialties" - specifically the 851 filed in my case. I have detailed numerous reasons why the 851 should be challenged, but again, I am a layman of the law. I believe you all will look through the record and craft the legal reasoning why this 851 is bad to use juvenile language.

I need your help in all these things.

A year has passed and I have nothing to file. I feel that Leading Edge has caused me to be at the 40 day to go mark without a finished product. I am scared I will miss the deadline; a real fear with devastating consequences.

I don't have the time now to hire someone else to finish what you all were supposed to do; what you have said numerous times

was "in the works". George Carlton is doing well for clients with the BOP you have stated. Helping my situation, if it is a little outside your normal modus operandi, should be no big deal.

Help

P.S. Yes, George Carlton's name is blocked. I am not getting the subscription emails I used to get multiple times weekly. The Trulincs system says "Blocked - Inmate".
-----Green, Tom on 5/3/2018 1:21 PM wrote:

>

Hi Roger,

George Carlton has been kicking the BOP's butt with civil law suits and has recently won a very large judgment for a client.  The BOP is not happy with George when they were recently ordered to pay almost a million dollar settlement.  the BOP cannot stop inmates from accessing George, but they can make it more difficult.  So when they see his name, they think "here comes trouble."

as you can see, Leading Edge has not been blocked.

we are waiting for you to send the hard copy of corrections needed to the draft motion. As i said, your case went off the rails as soon as you detoured from the instructions in the Welcome packet that requests information in writing, and i guess i was an accomplish by allowing you to continue to  vary from the procedures.

things are not going bad.  nothing has gone bad.  things just got off track and it's simple to get it on the right track again.

Please send the needed corrections to the draft brief and we will fix it.  we dont expect you to write the arguments that are omitted, but we do expect you to participate in the preparation of the brief by explaining, even in simple terms, what is missing and what is incorrect in the brief.

thanks
tom green

ROGER HARRY OLSON II on 5/2/2018 12:36:25 PM wrote
Tom,

I do not have the money to make telephone calls - sorry. I have used up most of my money hiring Leading Edge and emailing you... Just the facts Sir. I am wanting to file something rather then nothing which at this point is exactly what I have - nothing.

Now, I just discovered that Leading Edge "George Carlton" info@leadingedge has been blocked by Corrlinks. What's up?

Now I feel like things are going really bad.

Help!

Roger

TRULINCS 49151177 - OLSON II, ROGER HARRY - Unit: OAK-A-B

--------------------------------------------------------------------------------------------------

FROM: Green, Tom
TO: 49151177
SUBJECT: RE: In Transit
DATE: 05/18/2018 03:21:40 PM

HI Roger,

so i guess that means you did not get a chance to send us the 2255 memo back for corrections....

we have a letter from 03/05/18 concerning the 2255, its some notes. i guess we will work with those.

we still have until June 14th to file the brief. if needed, we can file the motion (front-end form) and then send the memorandum of law in support when you have an opportunity to assist more on it. this will deem the 2255 timely filed, and give us more time to perfect the arguments in the memorandum.

whatcha think?
tom green

ROGER HARRY OLSON II on 5/18/2018 11:52:39 AM wrote
Tom,

I have been in transit this week on my way to a low custody facility at Oakdale, Louisiana. The documents being completed will need to have the correct address on them and sent to me at the correct place, etcetera. I do not have that address to send you as I am still in Oklahoma City at the Federal Transfer Center. I am sorry I wasn't able to send you anything further, but I expect that didn't interrupt the process. You have been dealing with my frustrating situation long enough to have proceeded without my input. I look forward to getting things completed quickly. There is less then one month left to file this 2255 timely; I am well aware of the date as well as you are.

Sincerely,
Roger Olson 49151-177

TRULINCS 49151177 - OLSON II, ROGER HARRY - Unit: OAK-A-B

--------------------------------------------------------------------------------

FROM: Green, Tom
TO: 49151177
SUBJECT: RE: In Transit
DATE: 05/30/2018 02:21:19 PM

Hi Roger,

the paralegals looked through all your case file and say they cannot find the 03/05/18 letter.  I have it as received and delivered to them, this entry is out of my "Houston Mail Log":

OLSON, ROGER           2255 notes                          03/05/18 (picked up 03/05)

so i dont know what to tell you.... it arrived, it was recorded in my mail log and picked up by the paralegal secretary the on the same day it was delivered.  but they say it does not exist in your file.

thanks
tom green

ROGER HARRY OLSON II on 5/21/2018 8:36:29 PM wrote:
The letter you have of 03/05/18 is the one I sent via US mail to you in Houston correct? That is all I will be sending to you and nothing further. I want to file this thing complete and timely.

Thank you,
Roger Olson
-----Green, Tom on 5/18/2018 3:21 PM wrote:

>

HI Roger,

so i guess that means you did not get a chance to send us the 2255 memo back for corrections....

we have a letter from 03/05/18 concerning the 2255, its some  notes.  i guess we will work with those.

we still have until June 14th to file the brief.  if needed, we can file the motion (front-end form) and then send the memorandum of law in support when you have an opportunity to assist more on it.  this will deem the 2255 timely filed, and give us more time to perfect the arguments in the memorandum.

whatcha think?
tom green

ROGER HARRY OLSON II on 5/18/2018 11:52:39 AM wrote
Tom,

I have been in transit this week on my way to a low custody facility at Oakdale, Louisiana.. The documents being completed will need to have the correct address on them and sent to me at the correct place, etcetera. I do not have that address to send you as I am still in Oklahoma City at the Federal Transfer Center. I am sorry I wasn't able to send you anything further, but I expect that didn't interrupt the process. You have been dealing with my frustrating situation long enough to have proceeded without my input. I look forward to getting things completed quickly. There is less then one month left to file this 2255 timely; I am well aware of the date as well as you are.

Sincerely,
Roger Olson 49151-177

TRULINCS  49151177 - OLSON II, ROGER HARRY - Unit: OAK-A-B

--------------------------------------------------------------------------------------------

FROM: Green, Tom
TO: 49151177
SUBJECT: RE: 3 Days Left
DATE: 06/13/2018 05:36:20 PM

Hi Roger,

OK.  We sent the corrected 2255 and memorandum FedEx overnight to the court (yesterday, so if you check with me tomorrow i'll see if it's on the docket) and we sent you a copy of them with a USPS o          Tracking No. 9505 5000 2004 8164 0002 92; and an expected delivery date of 06/15/18.

if there are any errors in the 2255, we can still amend the filing.  Please let me know when you receive your copy and what you think.

thanks
tom green

ROGER HARRY OLSON II on 6/12/2018 3:52:42 PM wrote
Thank you so much.
-----Green, Tom on 6/12/2018 11:21 AM wrote:

>

Hi Roger,

I'm sure you have been nervous about your 2255, and you have every right to be upset with me for not keeping you updated with your case.

We are sending the "front end" (the form) of the 2255 to the court so it will be timely filed, then we can file the memorandum in support.

I sent your email with the four concerns about  the 2255 to the paralegals and they are trying to work it out into a brief.  but be assured that with the 2255 form filed you are in the court in a timely manner.

So as we speak the paralegal is attempting to finish the 2255 memo for your review before filing.

I  will send you the USPS tracking number when it is forwarded to me from our mail department, today.

I'll be in touch soon,
tom green

ROGER HARRY OLSON II on 6/11/2018 4:35:29 PM wrote
Tom,

I was hoping to hear something from you. I am nervous that I have nothing to submit to the court. I still do no have my property from Atlanta so I have NOTHING, not even an old 2255 to mail off. I was hoping to receive a tracking number for a letter from you.... or something...

I will call Riley Mason this evening at about 6:00pm. I hope he will have some answers..

This is really cutting things close. Wow!

Sincerely,
Roger Olson 49151-177

TRULINCS  49151177 - OLSON II, ROGER HARRY - Unit: OAK-A-B

---------------------------------------------------------------------------------------------------

FROM: Green, Tom
TO: 49151177
SUBJECT: RE: Tried To Telephone
DATE: 06/21/2018 08:51:25 PM

Hi Roger,

i am also pissed about this because it reflects badly on me, even though it occurred before my employment.

i have never seen the 256 number.  here are valid numbers:

tom green: 256-324-7404 (but i dont know what i can do, i am at the bottom of totem poll here)
Riley Mason: 615-419-1250

the 307-752-1927 only gets answered from 5:30 pm to 7:pm Monday thru Thursday, by Riley Mason usually.  he is the one you need to contact about this.  he is the big boss.

but it appears that who ever did the entry in your file went by the mandate date, which we all know is not correct.  i am behind you 100% because if its not right, its wrong. period.  but there is still the issue of you stalling and ranting and not participating in this process.  i do not know why you did not jump on them back in june last year when they sent you the first 2255. had you done so, it would have been filed last  year most likely.  so even with the wrong due date, you have to take some responsibility for dragging your feet so long.  i can see at least four times that I contacted you concerning getting your 2255 done, and that was between mid-june and april.

i will forward your case file to Riley.  Please get a hold of him.

no excuse. on both parties.
tom green

ROGER HARRY OLSON II on 6/21/2018 2:51:52 PM wrote
Tom,

I tried to call just now (1:15pm) to two numbers and both did not answer and as well do not have voicemail set up. The numbers I attempted are 256.808.9009 (Leading Edge Legal Research Team) and 307.752.1927 (Riley Mason). My counselor allowed the telephone calls due to them being legal calls.

I am concerned that both numbers went unanswered. I am concerned that both do not have voicemail service. I am concerned that this is turning out to be not an actual business. Please send me a number that I can call to discuss what is happening. Your number would be outstanding!

By now you should have checked PACER and noted what is happening.

Sincerely,
Roger Olson 49151-177

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGER HARRY OLSON, II, | § | |
| (BOP Register No. 49151-177), | § | |
| | § | |
| Movant, | § | |
| | § | |
| v. | § | Civil No. 3:18-cv-1530-N-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## RESPONSE TO ORDER TO SHOW CAUSE
## REGARDING LIMITATIONS

COMES Movant, ROGER HARRY OLSON, II ("Olson"), appearing *pro se,* and files response to Magistrate Judge's Order to Show Cause Regarding Limitations ("Order") as follows:

### I. Preliminary Statement

As a preliminary matter, Olson respectfully requests that this Court be mindful that "[T]he filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Hernandez v. Thaler*, 630 F.3d 420 (5th Cir. 2011); *Haines v. Kerner*, 404 U.S. 519 (1972). Olson also adopts by reference and in whole his previously filed Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See CvDoc. 1.[1]

## II. Order to Show Cause Regarding Limitations

The Order is divided into three (3) main sections: (A) Applicable Background; (B) Legal Standards; and (C) Analysis. Olson will reply to each section sequentially as follows:

### A.    Applicable Background

The Magistrate Judge David L. Horan gives a fair and accurate summation of the relevant procedural background in this case. See CvDoc. 4 at 1-2. Olson does not object or take exception to this section.

### B.    Legal Standards

In this section of the Order, the magistrate judge merely gives the legal standard for § 2255 Motions' one-year statute of limitations. See Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (1996) ("the AEDPA"), codified at 28 U.S.C. § 2255(f). *Id.* at 2-4. Olson does not take exception to this section of the Order.

---

[1]    "CvDoc." refers to the Docket Report in the United States District Court for the Northern District of Texas, Dallas Division in Civil No. 3:18-cv-1530-N-BN , which is immediately followed by the Docket Entry Number.

## C.   Analysis

In this section of the Order, the magistrate judge stated:

"Olson's conviction became final on May 21, 2017 – the date on which his time to file a petition for a writ of certiorari expired. See *Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"). And his AEDPA statute of limitations expired one year later, on May 21, 2018. His Section 2255 motion – which was mailed on June 12, 2018, and received on June 13, 2018 – appears to be time-barred."

Here, Olson's sentence was affirmed on February 20, 2017. All the same, the Court issued its Judgment/Mandate on March 14, 2017. Because Olson is filing *pro se*, it was his understanding that the Judgment/Mandate date is the official date of the affirmance on direct appeal, and that judgment becomes "final" when the 90-day period for filing a certiorari petition expire– which in his case is on June 12, 2017.

With regard to Olson's § 2255 Motion mailed via Fed-Ex Express, Olson hired a typing services company to help make his motion presentable. Worried that his motion won't be mailed on or before June 12, 2018, Olson requested the typing services to mail the document on his behalf.

Because Olson is filing *pro se*, with limited access to legal resources, and his lack of skill in the science of law, it is an excusable neglect that Olson failed to file his § 2255 at the proper time (May 21, 2018).

3

WHEREFORE, Olson prays that this response be regarded. Respectively, Olson requests that the Court consider the merits of his § 2255's Motion and not to summarily dismiss based on timeliness.

Respectfully submitted,

Dated: June ___, 2018

_____
ROGER HARRY OLSON, II
REG. NO. 49151-177
FCI OAKDALE I
FEDERAL CORR. INSTITUTION
P.O. BOX 5000
OAKDALE, LA  71463
Appearing *Pro Se*

4

Exhibit "P"

State of Arizona

County of Maricopa


Affidavit

Roger Harry Olson


I, Roger Harry Olson, a resident of Mesa, Arizona, hereby solemnly swear, state and depose under oath the following, to wit:


1. That I am the father of Roger Harry Olson II (herein "Roger"); and, that my son Roger is a federal prisoner currently detained in Oakdale, Louisiana.


2. That on or about April of 2017, Roger became aware of a legal assistance firm by the name of American Leading Edge Research Team (herein "Leading Edge") who has offices in Alabama, Texas and Wyoming.


3. That on or about May of 2017, I contacted Alexa Wade (a Leading Edge account representative) who forwarded the Leading Edge contract (i.e. fees and services) to myself; whereafter, I paid the quoted $2,250 fee to Leading Edge who then forwarded Roger a Welcome Letter regarding his case.


4. That from the onset of the payment of fees, Roger reported to me the repeated delays, lack of organization and confusion exhibited by Leading Edge; and, Roger's fear that the 2255 Motion would not be filed on time. Specifically, Tom Green (also a Leading Edge account representative) consistently leading both Roger and myself to believe that the motion would be timely.


5. That since the filing of his 2255 Motion, Roger has informed me the Judge in his case believes the motion was late and has ordered Roger to explain why it should not be considered late and/or why the lateness should be excused.

6. That I have personal knowledge of the above; and, that it is true and correct; but for the inexperience and/or deliberate deceptions of Leading Edge, Roger's 2255 Motion would not have been filed late; that the reasons excusing the lateness would not be necessary; and, am willing to testify to any or all of the above at a hearing if necessary.

Date: _07/09/2018_

Executed: _Roger H Olson_



MICHELE LYNN MARINO
Notary Public - Arizona
Maricopa County
My Comm. Expires Dec 12, 2019

Roger Harry Olson

6290 East McKellips Road #231

Mesa, AZ 80215

Sworn to and subscribed before me on this 9th day of July, 2018.

_Michele L Marino_

Notary Public

_____

State of Arizona

_12/12/2019_

Commission Expiry Date

Roger Harry Olson, II
Reg. No. 49151-177
FCI Oakdale I
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463


13 July, 2018



Clerk of Court
U.S. District Court
Northern District of Texas
Dallas Division
1100 Commerce Street, Room 1452
Dallas, TX 75242

RE:  Olson v. United States
     Civil No. 3:18-cv-1530-N-BN

Dear Clerk of Court:

Enclosed please find one (1) origianl and two (2) copies of my "Response to
Show Cause Order" for filing with the court. Also enclosed is an extra front
page for you to stamp and return for my files (self addressed stamped envelope
enclosed for your convenience.)


Sincerely,

*Roger H. Olson II*

Roger Harry Olson, II
Appearing Pro Se

Roger Olson, II
49151-177
FCI-1 Oakdale
P.O. Box 5000
Oakdale, LA 71463





PRIORITY MAIL

UNITED STATES POSTAL SERVICE®

For Domestic Use Only

★ TRACKED ★ INSURED ★

Label 107R, July 2013

CERTIFIED MAIL®

7018 0360 0000 8933 2842

RECEIVED
JUL 19 2018
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

◇◇49151-177◇◇
Clerk Of The District Court
U.S. District Court
Northern District of Texas
1100 Commerce St, Rm 1452
Dallas, TX 75242
United States

