IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROGER HARRY OLSON, II | § | |
| (BOP Register No. 49151-177), | § | |
| | § | |
| Movant, | § | |
| | § | |
| V. | § | No. 3:18-cv-1530-N-BN |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Movant Roger Harry Olson, II, proceeding *pro se*, has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his federal sentence. *See* Dkt. Nos. 1 & 2. This resulting action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge David C. Godbey.

On June 15, 2018, the Court ordered Olson to show cause in writing why his motion should not be summarily dismissed as time-barred. *See* Dkt. No. 4. Olson's response was received and docketed on July 19, 2018. *See* Dkt. No. 5.

The undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss the Section 2255 motion with prejudice as time-barred.

## Applicable Background

Olson pleaded guilty to two controlled substance offenses and was sentenced to

180 months of imprisonment, to be served consecutively with any sentence imposed in his parallel state proceedings. *See United States v. Olson*, No. 3:15-cr-29-N (01) (N.D. Tex.), Dkt. No. 65. The United States Court of Appeals for the Fifth Circuit affirmed Olson's conviction and sentence on February 20, 2017. *See United States v. Olson*, 849 F.3d 230 (5th Cir. 2017) (per curiam). He did not seek review in the United States Supreme Court.

And his Section 2255 motion was filed no sooner than June 12, 2018, the date that Olson avers that he deposited that motion into the prison mail for filing. *See* Dkt. No. 2 at 34; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (concerning the prison mailbox rule); *but see* Dkt. No. 1 at 14 (packaging that shows that Olson's Section 2255 motion was, in fact, mailed via Fed-Ex Express on June 12 by George Alexander and from 2701 Mall Drive Suite 7 in Florence, Alabama).

## Legal Standards

Section 2255 proceedings are governed by a one-year statute of limitations. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), *codified at* 28 U.S.C. § 2255(f). The limitations period runs from the latest of:

(1)     the date on which the judgment of conviction becomes final;

(2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme

Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

The one-year limitations period is also subject to equitable tolling in "rare and exceptional circumstances." *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)).

> "Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (internal quotation marks and citation omitted). "[T]he principles of equitable tolling ... do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990). Unfamiliarity with the legal process does not justify equitable tolling. *Turner v. Johnson*, 177 F.3d 390, 392 (5th Cir. 1999).

*United States v. Kirkham*, 367 F. App'x 539, 541 (5th Cir. 2010) (per curiam).

But "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. ____, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

The United States Supreme Court has reaffirmed "that the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." *Id.* at 756 (emphasis in original); *see, e.g., Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam)

(holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

The Supreme Court also has determined that AEDPA's statute of limitations can be overcome by a showing of "actual innocence." *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). That is, the new, reliable evidence must be sufficient to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted; emphasis in original)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States

District Courts provides in part that "[i]f it plainly appears from the [Section 2255] motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *Id.*; *see generally, e.g, Estrada-Herrera v. United States*, No. 3:16-cv-1299-L-BN, 2016 WL 4098533 (N.D. Tex. May 13, 2016) (applying Rule 4(b) summary treatment to a time-barred motion), *rec. accepted*, 2016 WL 4039185 (N.D. Tex. July 28, 2016).

But, "'before acting on its own initiative' to dismiss an apparently untimely [Section 2255 motion] as time barred, a district court 'must accord the parties fair notice and an opportunity to present their positions.'" *Wyatt v. Thaler*, 395 F. App'x 113, 114 (5th Cir. 2010) (per curiam) (quoting *Day v. McDonough*, 547 U.S. 198, 210 (2006; alteration to original)); *see also Sosa-Saucedo v. United States*, No. 6:09cv491, 2011 WL 336456 (E.D. Tex. Jan. 31, 2011) (applying *Day* to Section 2255 motions). The June 15, 2018 show cause order [Dkt. No. 4] provided this notice. And Olson has presented his positions. *See* Dkt. No. 5.

### Analysis

Olson's criminal judgment became final on Monday, May 22, 2017 – the date on which his time to file a petition for a writ of certiorari expired. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires"); FED. R. CIV. P. 6(a)(1)(C). And, under Section 2255(f)(1), the AEDPA statute of limitations expired one

year later, on May 22, 2018. *See, e.g., Perez v. United States*, No. 13 C 4478, 2015 WL 9460137, at *4 (N.D. Ill. Dec. 22, 2015) (where the 90-day period for filing a cert petition expired on a Sunday, that deadline is extended to the next weekday that is not a legal holiday, and Section 2255(f)(1)'s one-year deadline is calculated from that date).

In his verified show cause response, Olson agrees with this assessment and adds – "Movant's motion to vacate was filed on June 12, 2018 (i.e. approximately 20 days past Movant's apparent one year dea[d]line). Absent equitable tolling Movant's § 2255 motion to vacate is untimely. Movant contends, however, and will establish infra, that extraordinary circumstances exist here that warrant equitable tolling." Dkt. No. 5 at 1. Olson attempts to establish equitable tolling by showing that the firm he and his family hired to assist him to prepare his Section 2255 motion – American Leading Edge Research Team (or "ALERT") – incorrectly calculated the deadline to file the motion. *See generally id.*

And, in the show cause response, Olson provides a detailed timeline of his (and his father's) interactions with ALERT, beginning in March of 2017 and culminating with a proposed response to the limitations show cause order Olson represents was drafted for him by ALERT. *See id.* at 1-5 & 28-31. That timeline is supported by documents attached to the verified response – a Service Agreement between ALERT2020, a subsidiary of ALERT, and Olson, *see id.* at 10-15; various emails between Olson and his father and persons associated with ALERT, *see id.* at 17-27; and an affidavit from Olson's father, *see id.* at 32-33.

The Service Agreement provides that, in exchange for $2,250.00, "ALERT agrees

to use its best efforts to argue [Olson's] case with supporting precedent case law which is applicable to [his] case." Dkt. No. 5 at 10. ("The staff of ALERT will be preparing documents based on ALERT's legal research for [Olson] who will be filing same pro se with the federal court system in an effort to gain release or a shorter sentence than he is presently serving."). While that agreement provides that "one of ALERT's attorneys will read and review the final draft prior to it being sent to [Olson] to assure that the filing has been reviewed by a licensed attorney," *id.* at 11, in the proposed response to the limitations show cause order that Olson represents was drafted by ALERT, ALERT appears to characterize itself as merely "a typing services company [retained by Olson] to help make his motion presentable," *id.* at 30. And Olson characterizes ALERT as providing deficient legal advice as to when the Section 2255 must be timely filed:

> Instead of competent attorneys and paralegals, Movant has only been brushed off on individuals (supposedly account representatives) who seemingly know nothing of Movant's case and claimed to have misplaced the 3/5/18 message Movant sent informing about the details/facts of the case. And, who either deliberately misled Movant about the timeliness of the petition or had no knowledge of the gatekeeping principles associated with AEDPA's one year deadline. Specifically, Tom Green of ALERT (and indeed all of ALERT) dodging Movant for months (supra, pp 3-4), and continuely assuring (albeit falsely) that the petition would be timely. Here, whether affirmative misadvice, or deliberate deception – either situation warrants tolling.
>
> Moreover, this is not the run-of-the-mill case where attorney dupes client, but a complicated situation where a purported paralegal firm (claiming to be guided by attorneys) dupes client and client's father. Here, the deception ran deep in that ALERT drew Movant's father right in, quickly took their funds (without seeking Movant's father's signature on ALERT's contract), and deceived him as well as regarding timeliness of the petition.

*Id.* at 5-6 (citations omitted).

But, even if the Court were to accept – for the purpose of deciding the timeliness

of the Section 2255 motion – that an attorney-client relationship existed between Olson and ALERT, Olson has only shown, at most, that ALERT was negligent in calculating the date that the Section 2255 motion was due to be filed. *See, e.g.,* Dkt. No. 5 at 4 ("By June 12, 2018, ALERT files the brief on behalf of Movant and the Court issues its show cause order for Movant to show cause as to why the § 2255 motion to vacate should not be denied as untimely. Movant sends a message informing Tom Green of the Court's action and that Movant has learned that ALERT's time calculation was from the date the mandate issued and not the date of which the conviction became final. Tom Green admits that ALERT was at fault." (citation omitted)); *id.* at 25 (May 18, 2018 email from Green to Olson ("[W]e still have until June 14th to file the brief. If needed, we can file the motion (front-end form) and then send the memorandum of law in support when you have an opportunity to assist more on it.")); *compare id.*, *with Olson*, No. 3:15-cr-29-N (01) (N.D. Tex.), Dkt. No. 89 (Fifth Circuit's judgment and mandate, issued March 14, 2017).

> Mere attorney error or neglect is not an extraordinary circumstance warranting equitable tolling. *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002). However, an attorney's intentional deception may warrant equitable tolling, but only if the petitioner shows that he reasonably relied on his attorney's deceptive misrepresentations. *See United States v. Wynn*, 292 F.3d 226, 230-31 (5th Cir. 2002). In *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir. 2003), [the Fifth Circuit] held that equitable tolling was not warranted where the movant's attorney gave him incorrect legal advice regarding the time for filing a 28 U.S.C. § 2255 motion. The court noted that the movant had presented no evidence that the attorney had intentionally deceived him. *Id.* at 799-800.

*United States v. Sealed Appellant 1*, 70 F. App'x 774, 775 (5th Cir. 2003) (per curiam) (citations modified); *see also Cousin*, 310 F.3d at 848-49 ("Many courts have considered

the question whether attorney error constitutes 'rare and exceptional circumstances' and have held that it does not. Additional support for the proposition that attorney error does not trigger equitable tolling is the longstanding rule that prisoners are not entitled to counsel during habeas proceedings and thus cannot state a claim for ineffective assistance during those proceedings. Moreover, a petitioner's ignorance or mistake is insufficient to warrant equitable tolling." (citations and footnote omitted)); *but cf. Palacios v. Stephens*, 723 F.3d 600, 604 n.3 (5th Cir. 2013) (clarifying that, "[i]nsofar as *Riggs* [may be] read to foreclose the availability of equitable tolling where an attorney abandons his client but does not make an affirmative misrepresentation, 314 F.3d at 799, it is in tension with recent Supreme Court guidance that abandonment alone may suffice to establish an extraordinary circumstance potentially warranting equitable tolling" (citing *Maples v. Thomas*, 565 U.S. 266, 281-82 (2012) (relying on *Holland*); *Manning v. Epps*, 688 F.3d 177, 184 n.2 (5th Cir. 2012) ("[A]ttorney abandonment can qualify as an extraordinary circumstance for equitable tolling purposes." (relying on *Maples*)))).

In *Wynn*, for example, the Fifth Circuit concluded "that equitable tolling may apply" – and therefore remanded for a hearing – where the movant "received a letter from the district court that no petition had been filed on his behalf"

> and[, when he] was unable to successfully contact his attorney, he acted promptly to send his father to inquire as to the meaning of the letter. It was at that time that the attorney allegedly misled Wynn by telling his father that the petition had in fact been filed directly with the judge, explaining the lack of record in the clerk's office. His attorney allegedly told Wynn to wait patiently for action by the court.

*Wynn*, 292 F.3d at 230; *see also Vineyard v. Dretke*, 125 F. App'x 551, 553 (5th Cir.

2005) (per curiam) ("Vineyard ...   asserted that [his attorney] *affirmatively misinformed* him that his [petition for discretionary review to the Texas Court of Criminal Appeals] was still pending and thus caused him to refrain from taking matters into his own hands. *Wynn*, which involved similar allegations to Vineyard's, still appears to be the most apposite decision from this circuit." (citation omitted; emphasis in original)).

Here, Olson presents a well-documented record that shows his dissatisfaction with the services that he received from ALERT. But that record fails to demonstrate that ALERT either abandoned him or intentionally deceived him regarding the correct date by which to file the Section 2255 motion. It certainly was a mistake to calculate that date based on the date that the Fifth Circuit issued its mandate. But, even if that mistake amounts to negligence, "[n]egligent conduct, standing alone, is not a 'rare and exceptional' circumstance that warrants equitable tolling." *Segura Martinez v. Quarterman*, No. 3:08-cv-316-L, 2008 WL 2673760, at *3 (N.D. Tex. June 25, 2008) ("Here, petitioner does not allege any deceit or intentional misconduct on the part of his attorney. At most, it appears that counsel may have been negligent in relying on the date the mandate issued in calculating the one-year limitations period. Negligent conduct, standing alone, is not a 'rare and exceptional' circumstance that warrants equitable tolling." (citing *Cousin*, 310 F.3d at 848-49; *Triplett v. King*, 250 Fed. Appx. 107, 109 (5th Cir. 2007) ("Even assuming that Triplett's counsel miscalculated the limitations period when he initially accepted the retainer fee in July 2003 and later agreed to the representation in December 2003, 'an attorney's error or neglect does not

warrant equitable tolling.'" (quoting *Riggs*, 314 F.3d at 799)))); *see also Sheedy v. Quarterman*, Civ. No. H-09-1569, 2010 WL 2612634, at *1 (S.D. Tex. June 29, 2010) ("In this case, petitioner complains that his appellate attorney advised petitioner's brother that a state habeas application could not be filed until mandate issued from the dismissal of petitioner's direct appeal and that the limitations period for filing a federal habeas petition commenced after mandate issued. Petitioner later employed another attorney who advised him and his family that the federal habeas limitations period would not commence until the ninety day period for filing a petition for writ of certiorari had expired. Although petitioner has attached many exhibits, he states no facts and presents no evidence to show that either attorney was intentionally deceitful or that he relied on their deceitful misrepresentations." (citations omitted)).

Olson also seems to admit that the record may only support negligent conduct. *See* Dkt. No. 5 at 5-6 (stating that ALERT "either deliberately misled Movant about the timeliness of the petition or had no knowledge of the gatekeeping principles associated with AEDPA's one year deadline" and arguing "whether affirmative misadvice, or deliberate deception – either situation warrants tolling").

He has therefore not demonstrated that he is entitled to equitable tolling by showing that "rare, exceptional, or extraordinary circumstances beyond his control ... made it impossible for him to timely file" his Section 2255 motion. *Montes v. United States*, Nos. 3:13-cv-1936-K & 3:09-cr-286-K (04), 2014 WL 5286608, at *3 (N.D. Tex. Oct. 15, 2014) (citations omitted); *see also Menominee Indian Tribe*, 136 S. Ct. a 755-56; *Holland*, 560 U.S. at 649; *Farmer*, 640 F. App'x at 307.

For these reasons, the Section 2255 motion is time-barred.

## Recommendation

The Court should dismiss the Section 2255 motion as time-barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: September 26, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE