IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROGER HARRY OLSON, II,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

Case No.: 3:18-cv-1530-N



## OBJECTIONS TO MAGISTRATE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION

COMES NOW, the Movant, Roger Hary Olson, II, In Forma Pauperis and Pro Se form, pursuant to the Fed.R.Civ.P. 72(b)(2), and hereby submits his objections to the Magistrate's findings, conclusions, and recommendation. In support thereof, the Movant avers as follows:

### 1. MAGISTRATE'S FINDINGS

The Magistrate Judge found that Olson's theory is "that, because the firm [he hired] to prepare his Section 2255 motion, [ALERT] - incorrectly calculated the deadline to file that motion, ALERT's insufficient performance serves as a cause to excuse procedural default (i.e., untimely filing) as long as he can show a 'legitimate ineffective-assistance of trial counsel claim.' (quoting Mr. Olson at Dkt. No. 12 at 6). See Dkt. No. 13 at 3. It is respectfully submitted that this Honorable Court should fully appreciate the circumstances surrounding Mr. Olson's thoery, because the Magistrate's finding is nearsighted.

The mistake made by the Magistrate Judge was to conceive of equitable tolling inquiry as the search for a single trump card,

rather than an evaluation of the <u>entire</u> hand that Mr. Olson was dealt. In <u>Holland v. Florida</u>, 560 U.S. 631, 130 S.Ct. 2549, 177 L. Ed. 2d 130 (2010), the Court disapproved the use of such a single-minded approach. As the Court taught us that "a 'petitioner' is entitled to equitable tolling' only if he shows '(1) that he has been pusuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing. ... But we have ... made clear that often the 'exercise of a court's equity powers ... must be made on a case-by-case basis.' In emphasizing the need for 'flexibility,' for avoiding 'mechanical rules,' we have followed a tradition in which courts of equity have sought to 'relieve hardships which, from time to time, arise from a hard and fast adherence' to more absolute legal rules, which if strictly applied, threaten the 'evils of archaic rigidity.' The 'flexibility' inherent in 'equitable procedure' enables courts 'to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct ... particular injustices.' Taken together, these cases recongnize that courts of equity can and do <u>draw upon decisions made in other, similar cases for guidance</u>. Such courts exercise judgment in light of prior precedent, but with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." <u>Id</u>. at 560 U.S. at 649-51. (As an aside, it should be noted that, ALERT could have easily requested a continuance of the filing deadline because of the devastating impact of Hurricane Harvey had in the southern parts of Texas. <u>See</u> <u>e.g.</u>, <u>Jefferson v. Haza Foods</u>, 2018 U.S. Dist. Lexis 181493 (Oct 5, 2018) footnote 3, 4, and 5. )

   Here, the Magistrate only looked to <u>ALERT's failure to</u>

calculate the filing deadline correctly as the dispositive fact. See Olson, 2018 WL 6048018, at *3-*6 (determining that, "even if the Court were to accept-for the purpose of deciding the timeliness of the Section 2255 motion - that an attorney-client relationship existed between Olson and ALERT," ALERT's incorrect calculation of the filing deadline did not justify equitable tolling).

In Lombardo v. United States, 860 F.3d 547, 557-58 (7th Cir. 2017), which was relied upon by the Magistrate Judge, the court realized that "[t]hough some cases identify an attorney's failure to perform any research as among the factors that contributed to a finding of extraordinary circumstances, none of those cases rely solely on that factor or suggest it can be sufficient to support that finding." Id. at 554. Futhermore, "[a]s [the 7th Circuit] explained in Socha [v. Boughton, 763 F.3d 674, 685 (7th Cir. 2014),] "[d]efects in performance, whether through the attorney's own fault or attributable to extenuating circumstances, do not inevitably support equitable tolling, but they are relevant." (Emphasis added by the Movant).

Here, the circumstances are so compelling that it would manifest injustice to bar Mr. Olson from presenting his claims during a § 2255 proceeding. As such, the record before this Honorable Court reveals that a motion to suppress was filed and denied by this Court without findings of fact or conclusions of law, and that shortly thereafter, Mr. Olson entered a guilty plea. Also, that during the hearing on the motion to suppress, a government witness conceded that she had no probable cause to conduct a protective sweep of Mr. Olson's residence. Futhermore, that Mr. Olson was not informed by the Court nor by his counsel that by pleading guilty he waives the right to

challenge the denial of the motion to suppress on appeal. See e.g., United States v. Wise, 179 F.3d 184, 186 (5th Cir. 1999).

In addition, Mr. Olson was not the only one who believed that the denial of the motion to suppress was preserved. Appellate counsel vehemently argued that the District Court erred in the denial of the motion to suppress, although that issue was <u>procedurally barred by the guilty plea</u>, so much so, that there would have been a reasonable probability that the 5th Circuit would have agreed with Mr. Olson's counsel.

Lastly, that Mr. Olson sought advice from ALERT on moving this Court to vacate his sentence, but that ALERT miscalculated the deadline for filing the §2255 motion. Futhermore, that ALERT conducted no research with respect to the prison mail box rule, because prisoners represented by counsel or that send petitions via FedEx are not relying on prison officials to file their pleadings. Nor did ALERT conduct any research to determine if Mr. Olson's guilty plea was knowing or involuntary as a result of being misinformed by his counsel, although that was a central issue on appeal. See United States v. Olson, 849 F3d 230 (5th Cir. 2017) (per curiam). Mr. Olson has been proceduarally barred from presenting his 4th Amendment claim on direct appeal as a result of deficient performance from trial counsel, and has been barred from raising his ineffective assistance claim as a result of ineffective assistance of postconviction counsel, or his 4th Amendment claim on his 2255 motion.

Mr. Olson's ineffective assistance of counsel claim differs from others because counsel failed to preserve a clear 4th Amendment violation. In Weeks v. United States, 232 U.S. 383, 391-92, 34 S.Ct.

-4-

341, 58 L. Ed. 652 (1914), the Supreme Court emphasized not only the right to be free from unreasonable searches, but also the right to be <u>vindicated</u> when constitutional rights are violated:

> The effect of the <u>4th Amendment</u> is to put the courts of the United States and federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection <u>reaches all alike</u>, whether accused of crime or <u>not</u>, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. A general exploratory search through personal belongings is the precise evil sought to be eliminated by the Fourth Amendment's requirement that things to be seized and places to be searched be described with particularity. Standing alone, the clear language of the Fourth Amendment imparts this message. Under no circumstances could the officers justify their intrusion into an area such as a desk drawer, a filing cabinet or a nightstand to search for a television set. There was no conceivable justification for the officers to continue the search after the items described in the warrant had been seized. Absolutely no regard was shown for [Mr. Olson's] privacy.

<u>Creamer v. Porter</u>, 754 f.2d 1311, 1319 (5th Cir. 1985)(emphasis added by the Movant). As such, Mr. Olson's claims should be ajudicated, because they not only affect him, but everyone that is subject to the United States and enjoys privacy. There can be no doubt that by barring Mr. Olson from proceeding with his claims, the public's confidence in the judicial process will substantially dwindle, as the only way to be vindicated as a result of a constitutional violation, is to know the law for oneself.

## 2. MAGISTRATE'S CONCLUSIONS

The Magistrate concluded that the Martinez/Trevino exception does not apply to the to the statue of limitations set forth by Section 2255's one-year period. See Dkt. No. 13 at 4. In support thereof, the Magistrate points to Shank v. Vannoy, No. 16-30994, 2017 WL 6029846, at *2 (5th Cir. Oct. 26, 2017). Admittedly, the Martinez/Trevino exception does not apply here; However, that does not mean that this Court cannot draw from Martinez/Trevino for guidance in resolving this controversy. In fact, the court in Lombardo, supra, conceded that they "drew in part on the principles underlying Martinez and Trevino relative to the importance of ineffective assistance claims and petitioners' inablility to raise them at an earlier stage in the proceedings." Id. at 558. Futhermore, they refused to "recogniz[e] such an exception here [because it] would be inconsistent with Supreme Court precedent, and would require [them] to overturn [their] own precedent on this topic and create a circuit split." Id. Althought, they admitted that it is "[t]rue, [that] the Supreme Court has not applied those holdings in this precise fact-pattern, where the statute of limitations would bar an initial review of a claim for ineffective assistance of trial counsel." Therefore, the 7th Circuit pointed to their precedent; However, the Supreme Court cases that they rely on pointed to United States v. Locke, 471 US 84, 94, n 1-, 85 L. Ed. 2d 64, 105 S. Ct. 1785 (1985), and there they left open the general question of whether principles of equitable tolling, waiver, and estoppel apply against the Government when it involves a statutory filing deadline.

This Honorable Court should look to Buck v. Davis, 137 S. Ct.

759, 778, 197 L. Ed, 2d 1 (2017), and consider a "wide range of factors." Likewise, The Fifth Circuit has articulated a number of equitable factors relevant to the Rule 60(b) inquiry, which this Court should employ for resloving this controversy. See Seven Elves, Inc., v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981). Doing so will leave this Court with the conclusion that Mr. Olson should proceed with his 2255.

In sum, because the Magistrate Judge look for guidance in the 7th Circuit and that Circuit does not consider a "wide range of factors," like the ones articulated in Seven Elves, supra, the Magistrate's conclusions of law are misguided.

### 3. MAGISTRATE'S RECOMMENDATION

The Magistrate recommended that this Court treat the present Rule 60(b) motion as a impermissable second or successive Section 2255 motion, because "Olson seeks to assert a new Sixth Amendment claim." See Dkt. No. 13 at 7. It is respectfully submitted that the Magistrate misunderstood the purpose behind Mr. Olson asserting his trial counsel's deficient performance in his 60(b) motion.

The purpose behind asserting trial counsel's deficient performance in his 60(b) motion was to elucidate a fact pattern which this Court should consider in ajudicating the merits of this controversy. Mr Olson does not attack the manner in which this Court resolved the merits of the presently time barred 2255 motion. Likewise, there has been no determination if Mr. Olson is not entitled to relief. See Rule 4 of the Rules Governing Section 2255 Proceedings. If Mr. Olson's 2255 motion were to proceed, then there is no bar to Mr. Olson including that claim in his petition. This Court should consider the merits of this motion.

In <u>Ramirez v. United States</u>, 799 F.3d 845 (7th Cir. 2015), the court held that Ramirez's motion was not a disguised second or successive motion under 2255, and evaluated the motion, because he was not trying to present a new reason why he should be relieved of either his conviction or his sentence. He was instead trying to reopen his existing section 2255 proceeding and overcome a procedural barrier to it adjudication. Likewise, here, the sole purpose Mr. Olson is claiming ineffective assistance of trial counsel is to show a fact pattern that has the cummulative effect of manifesting injustice. Futhermore, if Mr. Olson were allowed to proceed with his 2255, there is no bar to amending the 2255 once prior to the United States responding.

### 4. CONCLUSION

Although <u>Martinez</u> does not apply in this specific context, that in no way means that this Court cannot draw from it just like the 7th Circuit did. The most important thing to draw from <u>Martinez</u> is what was the Supreme Court's intent. The <u>Martinez</u> holding was conceived because the need "to protect prisoners with potentially legitimate ineffective-assistance claim" is real. Futhermore, the Supreme Court has emphasized that "[d]ismissal of a <u>first</u> federal habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." <u>Lonchar v. Thomas</u>, 517 U.S. 314, 324, 116 S. Ct. 1293, 134 L. Ed. 2d 440 (1996)(emphasis added by the Court). Accordingly, in applying 60(b) to habeas courpus petitions, the Fifth circuit has persuasively held that :

> [t]he "main application" of Rule 60(b) "is to those cases

in which the true merits of a case might never be never be considered." Thus, although we rarely reverse a district court's exercise of discretion to deny a Rule 60(b) motion, we have reversed "where denial of relief precludes examination of the full merits of the cause," explaining that in such instances "even a slight abuse may justify reversa." Ruiz v. Quaterman, 504 F.3d 523, 532 (5th Cir. 2007)(quoting Fackelman v. Bell, 564 F.2d 734, 735 (5th Cir. 1977); Seven Elves, Inc.,[supra], We too believe that a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard. In such instances, including the case presently before us, this factor will cut in favor of granting Rule 60(b)(6) relief. Phelps v. Alameida, 569 F.3d 1120 (9th Cir. 2009) at 1140. As such, Mr. Olson will be barred from raising his 4th amendment claim, just like in his direct appeal, because of ineffective assistance of trial and post conviction counsel.

Moreover, no one- not this court, or the Fifth Circuit, or trial, appellate, or post conviction counsel has verified that Mr. Olson entered a guilty plea knowing that he was waiving the right to challenge the denial of the motion to suppress. Mr. Olson entered a guilty plea in exhange for enhancements to his sentence and the abdication of his right to be vindicated as a result of a clear invasion of privacy. "When the defendant waives his constitutional rights by pleading guilty, it is crucial that the waiver be knowing and voluntary. 'Courts must always be diligent to ascertain whether a plea of guilty was understandingly made, and when it appears before sentencing that such a plea was entered by a defendant who ... acted as a result of mistake, it is an

-9-

abuse of discretion not to permit the plea to be withdrawn.' <u>United States v. Mcdonald</u>, 416 Fed. Appx. 437 (5th Cir. 2011)(quoting <u>United States v. Pressley</u>, 602 F.2d 709, 710-711 (5th Cir. 1979).

What is more, is that the fact pattern present in this case affects not only Mr. Olson, but everyone alike, regardless of whether or not they are charged with a crime. Equity is holding everyone- including the Government- accountable for their actions. Simply because a person sounds like a female behind closed doors that does not justify a protective sweep of a residence.

> Q. What in imitating a female's voice to you that makes you believe that somebody is dangerous or conducting drug activity?
> A. Nothing.

Moreover,

> Q. Okay. So what made you believe at that point you had probable cause to enter inside the apartment. Anything?
> A. No.

(Record on Appeal. 459-460). Accordingly, law enforcement had no <u>legal</u> authority to enter Olson's apartment. Depriving a citizen of his liberty should not be as easy as taking candy from a baby. Before a defendant can be striped of the <u>presumption of innocence</u>, the Government must gather evidence to prove its case. The manner in which they do so should not offend the Constitution. As such, it would be a violation of Due Process to have a defendant prove he is actually innocent at a hearing on a motion to supress, as it would be here.

WHEREFORE, based on the above, and in the interest of justice and liberty for all, this Honorable Court should grant Olson's 60 (b)(6) motion and allow his § 2255 motion to proceed a timely.

Respectfully Submitted,

*[signature]*

Roger Harry Olson, II, Pro Se.
Reg No : 49151-177
FCI-1, Oakdale Unit A-2.
PO BOX 5000
Oakdale, LA 71463

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, under penalty of perjury, that the forgoing objection to the Magistrate's findings was placed in the hands of *Mr. Dill* (c/o at FCI-1, Oakdale) on this 10th day of January, 2019, for filing with this Honorable Court, via U.S.P.S <u>pre-paid first class</u> mail. <u>See</u> 28 U.S.C. § 1746.

Executed on January 10, 2019, in Oakdale, LA.

*[signature]*

-11-



⇔49151-177⇔
Clerk Of The District Court
U.S. District Court
Northern District of Texas
1100 Commerce St, Rm 1452
Dallas, TX 75242
United States

JAN 15 2019

⇔49151-177⇔
Roger Olson II
#49151-177 Oakdale I
Federal Correctional Instiution
P.O. Box 5000
Oakdale, LA 71463
United States